# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

# Appeal No. 23-466

---

JENNIFER JOHNSON,

*Plaintiff-Appellant,*

v.

MOUNT SINAI HOSPITAL GROUP, INC.,

*Defendant -Appellee.*

---

On Appeal from the United States District Court

For the Eastern District of New York

Civil Action File:  22-CV-2936 (AMD) (JRC)

---

APPELLANT'S APPENDIX

---

Jennifer Johnson in *Propria Persona*

22-46 79 St. Apt. 3A

East Elmhurst, New York 11370

718-791-8621

# Index

1) Notice of Appeal

2) District Court Docket Sheet

3) Johnson's Complaint

4) Johnson's Affidavit

5) Mt. Sinai's Motion to Dismiss

6) Johnson's Response to Motion to Dismiss

7) Order granting motion to dismiss

# CERTIFICATE OF SERVICE

I, Jennifer Johnson, hereby certify that a true and correct copy of the foregoing Appendix was duly served upon Mount Sinai Hospital's attorney Rory J. McEvoy, at the address of Akerman LLP, 1251 Avenue of the Americas; Ste 37th floor; New York, NY 10020, via first class mail on this 15 day of July, 2023.

I further certify that three true and correct copies of the foregoing Appendix was duly served upon the United States Court of Appeals for the Second Circuit at Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, NY 10007, via first class mail on this 15 day of July, 2023.

**By:** _____

Jennifer Johnson,
Plaintiff in *Propria Persona*
22-46 79 St. Apt. 3A
East Elmhurst, NY 11370
718-791-8621
Saynototheshot2021@protonmail.com



## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK
### 225 Cadman Plaza East; Brooklyn, NY 11201

JENNIFER JOHNSON
    PLAINTIFF

          v.                  CASE NO. <u>22-CV-02936 (AMD)(JRC)</u>

MOUNT SINAI HOSPITAL GROUP, INC
    DEFENDANT
_____/

### NOTICE OF APPEAL

Plaintiff, Jennifer Johnson, hereby gives notice of his appeal to the United States District Court from the order entered on February 28, 2023 executed by Ann M. Donnelly, United States District Judge.

Please provide a conformed copy of the order and include it with the notice of appeal, the complete transcripts of the case record; all motions filed, objections made; all documentary evidence from the case. Please transmit the record to the appeals court.

DATED this 24th day of March, 2022.

                                           *Jennifer Johnson*
                                         Jennifer Johnson,
                                     Plaintiff in *Propria Persona*

Query    Reports ⌄    Utilities ⌄    Help    Log Out

APPEAL,NPROSE

# U.S. District Court
# Eastern District of New York (Brooklyn)
# CIVIL DOCKET FOR CASE #: 1:22-cv-02936-AMD-JRC

*#2*

Johnson v. Mount Sinai Hospital Group, Inc.
Assigned to: Judge Ann M Donnelly
Referred to: Magistrate Judge James R. Cho
related case: 1:22-cv-02935-AMD-JRC
Cause: 42:1201 Civil Rights (Disability)

Date Filed: 05/16/2022
Date Terminated: 02/28/2023
Jury Demand: Plaintiff
Nature of Suit: 446 Civil Rights:
Americans with Disabilities - Other
Jurisdiction: Federal Question

**Plaintiff**

**Jennifer Johnson**                    represented by **Jennifer Johnson**
                                        22-46 79th Street
                                        Apt. 3A
                                        East Elmhurst, NY 11370
                                        718-791-8621
                                        PRO SE

V.

**Defendant**

**Mount Sinai Hospital Group, Inc.**     represented by **Rory J. McEvoy**
                                        Akerman LLP
                                        1251 Avenue of the Americas
                                        New York, NY 10020
                                        212-330-3800
                                        Email: rory.mcevoy@akerman.com
                                        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE NOTICED*

                                        **Brittany A. Buccellato**
                                        Akerman LLP
                                        1251 Avenue of the Americas
                                        Ste 37th Floor
                                        New York, NY 10020
                                        212-880-3800
                                        Fax: 212-880-8965
                                        Email: brittany.buccellato@akerman.com
                                        *ATTORNEY TO BE NOTICED*

                                        **Cassidy Mara**
                                        Akerman LLP

1251 Avenue of the Americas
Ste 37th Floor
New York, NY 10020
212-880-3816
Email: cassidy.mara@akerman.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/16/2022 | 1 | COMPLAINT against Mount Sinai Hospital Group, Inc., filed by Jennifer Johnson. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit) (Davis, Kimberly) (Entered: 05/19/2022) |
| 05/16/2022 | 2 | MOTION for Leave to Proceed in forma pauperis by Jennifer Johnson. (Davis, Kimberly) (Entered: 05/19/2022) |
| 05/19/2022 | 3 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if** all parties wish to consent. The form may also be accessed at the following link: http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences**. Do NOT return or file the consent <u>unless</u> all parties have signed the consent. (Davis, Kimberly) (Entered: 05/19/2022) |
| 06/03/2022 | 4 | MEMORANDUM AND ORDER denying 2 Motion for Leave to Proceed in forma pauperis. Within 14 days of the entry of this order, the plaintiff must pay the $402 filing fee to proceed with this action. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. Ordered by Judge Ann M. Donnelly on 6/3/2022. (Greene, Donna) (Entered: 06/03/2022) |
| 06/13/2022 | 5 | FILING FEE: $ 402.00, receipt number 4653165932 (Bowens, Priscilla) (Entered: 06/13/2022) |
| 06/22/2022 | 6 | Summons Issued as to Mount Sinai Hospital Group, Inc.. (Guzzi, Roseann) (Entered: 06/22/2022) |
| 06/27/2022 | 7 | ORDER: The Honorable Ann M. Donnelly has assigned this case to me for all pretrial purposes. Enclosed is a copy of my Individual Practices. Both Plaintiff and Defendant are required to follow them. The Court's records reflect that the complaint in this action was filed on May 16, 2022. Rule 4(m) of the Federal Rules of Civil Procedure provides: If a defendant is not served within 90 days after the complaint is filed, the court on motion or on its own after notice to the plaintiff must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. Plaintiff shall promptly advise the court once the Defendant has been served. Accordingly, if service is not made upon the Defendant by August 15, 2022, or Plaintiff fails to show good cause why such service has not been |

| | | effected, it will be recommended that the Court dismiss this action without prejudice. Plaintiff is required to advise the Clerk of Court of any change of address. Failure to keep the Court informed of Plaintiff's current address means the Court will not know where to contact Plaintiff and may result in dismissal of the case. For information regarding court procedures, Plaintiff may contact the Pro Se Office at the United States Courthouse by calling (718) 613-2665. Ordered by Magistrate Judge James R. Cho on 6/27/2022. (Attachments: # 1 Chamber's Individual Rules) (Gillespie-Cardo, Saudia) (Entered: 06/27/2022) |
|---|---|---|
| 08/03/2022 | 8 | SUMMONS Returned Executed by Jennifer Johnson. Mount Sinai Hospital Group, Inc. served on 7/15/2022, answer due 8/5/2022. (Herrera, Isaiah) (Entered: 08/05/2022) |
| 08/08/2022 | 9 | Letter MOTION for Extension of Time to File Answer *, Move, or Otherwise Respond to the Complaint until Friday, August 19, 2022* by Mount Sinai Hospital Group, Inc.. (McEvoy, Rory) (Entered: 08/08/2022) |
| 08/09/2022 | 10 | NOTICE of Appearance by Rory J. McEvoy on behalf of Mount Sinai Hospital Group, Inc. (notification declined or already on case) (McEvoy, Rory) (Entered: 08/09/2022) |
| 08/09/2022 | 11 | NOTICE of Appearance by Brittany A. Buccellato on behalf of Mount Sinai Hospital Group, Inc. (aty to be noticed) (Buccellato, Brittany) (Entered: 08/09/2022) |
| 08/09/2022 | 12 | NOTICE of Appearance by Cassidy Mara on behalf of Mount Sinai Hospital Group, Inc. (aty to be noticed) (Mara, Cassidy) (Entered: 08/09/2022) |
| 08/09/2022 | | ORDER granting 9 Motion for Extension of Time to Answer. Defendant Mount Sinai Hospital Group, Inc. shall answer, move or otherwise respond to the complaint by 8/19/2022. Counsel for defendant is directed to immediately forward a copy of this Order to the plaintiff, who is proceeding pro se and file proof of service with the Court. Ordered by Magistrate Judge James R. Cho on 8/9/2022. (Gillespie-Cardo, Saudia) (Entered: 08/09/2022) |
| 08/09/2022 | 13 | AFFIDAVIT of Service for Order Granting Motion For Extension Of Time served on Jennifer Johnson on August 9, 2022, filed by Mount Sinai Hospital Group, Inc.. (Attachments: # 1 Order Granting Motion For Extension Of Time) (McEvoy, Rory) (Entered: 08/09/2022) |
| 08/19/2022 | 14 | MOTION to Dismiss by Mount Sinai Hospital Group, Inc.. (McEvoy, Rory) (Entered: 08/19/2022) |
| 08/19/2022 | 15 | AFFIDAVIT/DECLARATION in Support re 14 MOTION to Dismiss *Declaration of Rory J. McEvoy, Esq.* filed by Mount Sinai Hospital Group, Inc.. (Attachments: # 1 Exhibit Exhibit 1: Amended Complaint in Shklyar v. Carboline Co., No. 22-CV-391, # 2 Exhibit Exhibit 2: Affidavit in Support of Original Complaint in Shklyar v. Carboline Co., No. 22-CV-391) (McEvoy, Rory) (Entered: 08/19/2022) |
| 08/19/2022 | 16 | MEMORANDUM in Support re 14 MOTION to Dismiss filed by Mount Sinai Hospital Group, Inc.. (McEvoy, Rory) (Entered: 08/19/2022) |
| 08/23/2022 | | SCHEDULING ORDER: The Court is in receipt of the defendant's 14 motion to dismiss. The plaintiff is directed to file an opposition, if any, by September 19, 2022. The defendant is directed to file its reply, if any, no later than October 3, 2022. Ordered by Judge Ann M. Donnelly on 8/23/2022. (Jones, Jenna) (Entered: 08/23/2022) |

| 09/14/2022 | 17 | RESPONSE to Motion re 14 MOTION to Dismiss filed by Jennifer Johnson. (Almonte, Giselle) (Entered: 09/14/2022) |
|---|---|---|
| 09/14/2022 | 18 | MOTION to Amend/Correct/Supplement 1 Complaint by Jennifer Johnson. (Attachments: # 1 Affidavit in Support) (Almonte, Giselle) (Entered: 09/14/2022) |
| 09/16/2022 | | ORDER: By 9/23/2022, defendant shall respond to Dkt. 18 Motion to Amend/Correct /Supplement. Ordered by Magistrate Judge James R. Cho on 9/16/2022. (Gillespie-Cardo, Saudia) (Entered: 09/16/2022) |
| 09/19/2022 | 19 | Letter MOTION for Extension of Time to File *Opposition to Plaintiff's Motion to Amend the Complaint* by Mount Sinai Hospital Group, Inc.. (McEvoy, Rory) (Entered: 09/19/2022) |
| 09/19/2022 | | ORDER granting 19 Motion for Extension of Time to File. The time for defendant to respond to 18 Motion to Amend/Correct/Supplement is extended to 10/3/2022. Ordered by Magistrate Judge James R. Cho on 9/19/2022. (Gillespie-Cardo, Saudia) (Entered: 09/19/2022) |
| 10/03/2022 | 20 | REPLY in Support re 14 MOTION to Dismiss , MEMORANDUM in Opposition re 18 MOTION to Amend/Correct/Supplement 1 Complaint filed by Mount Sinai Hospital Group, Inc.. (McEvoy, Rory) (Entered: 10/03/2022) |
| 02/22/2023 | 21 | MEMORANDUM DECISION AND ORDER. The defendant's motion to dismiss is granted. The plaintiff's motion to amend is denied as futile. Although courts in this circuit are generally reluctant to dismiss a pro se plaintiff's action without permitting leave to amend, it is appropriate to do so [w]here it appears that granting leave to amend is unlikely to be productive. Ruffolo, 987 F.2d at 131. Because neither the plaintiff's original complaint, nor her proposed amended complaint, contain allegations or representations that suggest she could possibly state a cognizable claim for relief, granting leave to amend would be unproductive. Accordingly, the complaint is dismissed, and the Clerk of Court is directed to close this case. Ordered by Judge Ann M. Donnelly on 2/22/2023. (DG) (Entered: 02/22/2023) |
| 02/28/2023 | 22 | CLERK'S JUDGMENT dated 2/27/23 that the defendant's motion to dismiss is granted; and that the plaintiff's motion to amend is denied as futile. ( Ordered by Jalitza Poveda, Deputy Clerk on behalf of Brenna B. Mahoney, Clerk of Court on 2/27/2023 ) c/m w/appeals pkg. (RG) (Entered: 02/28/2023) |
| 03/21/2023 | 23 | MOTION to Vacate 22 Clerk's Judgment, by Jennifer Johnson. (RG) (Entered: 03/24/2023) |
| 03/24/2023 | | SCHEDULING ORDER: The defendant is directed to respond to 23 the plaintiff's motion to vacate by April 7, 2023. Ordered by Judge Ann M. Donnelly on 3/24/2023. (JJ) (Entered: 03/24/2023) |
| 03/28/2023 | 24 | NOTICE OF APPEAL as to 22 Clerk's Judgment, 21 Order on Motion to Dismiss, Order on Motion to Amend/Correct/Supplement, by Jennifer Johnson. (VJ) (Entered: 03/30/2023) |
| 03/28/2023 | | APPEAL FILING FEE DUE re 24 Notice of Appeal Payment in the amount of $505.00, can be made in person to the clerks office, or mailed in or paid online with the event *Civil Case Appeal Filing Fee*. (VJ) (Entered: 03/30/2023) |

| 03/30/2023 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 24 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered: 03/30/2023) |
|---|---|---|
| 04/07/2023 | 25 | USCA Appeal Fees received $ 505 receipt number 100006073 re 24 Notice of Appeal filed by Jennifer Johnson (VJ) (Entered: 04/07/2023) |
| 04/07/2023 | | Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 24 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered: 04/07/2023) |
| 04/07/2023 | 26 | MEMORANDUM in Opposition *to Plaintiff's Motion to Vacate* filed by Mount Sinai Hospital Group, Inc.. (McEvoy, Rory) (Entered: 04/07/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/27/2023 16:41:10 | | |
| PACER Login: | imtoddp1 | Client Code: |
| Description: | Docket Report | Search Criteria: | 1:22-cv-02936-AMD-JRC |
| Billable Pages: | 4 | Cost: | 0.40 |

#3

Jennifer Johnson,
Plaintiff in Propria Persona
22-46 79 St. Apt. 3A
East Elmhurst, NY 11370
718-791-8621
Saynototheshot2021@protonmail.com



MAY 1 6 2022

PRO SE OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
225 Cadman Plaza East; Brooklyn, NY 11201

JENNIFER JOHNSON
    PLAINTIFF

v.

CASE NO. **22-cv-2936**

MOUNT SINAI HOSPITAL GROUP, INC
    DEFENDANT

**Donnelly, J.**

**Cho, M.J.**

_____/

<u>COMPLAINT & DEMAND FOR JURY TRIAL</u>

Plaintiff, Jennifer Johnson ("plaintiff"), files this Complaint against Defendant, MOUNT SINAI HOSPITAL GROUP, INC ("defendant") and states as follows:

<u>INTRODUCTION</u>

1.    This is a claim by plaintiff Jennifer Johnson against her former employer for the violation of the Americans with Disabilities Act Amendments Act ("ADA-AA"), 42 U.S.C. § 12101, et seq., for discrimination and retaliation on the basis of disability, and for prohibited actions taken on the basis of this disability under the "regarded as" prong; and for declaratory and injunctive relief under Title I of the Americans with Disabilities Act as implemented under 29 CFR Part 1630, et sequitur.

2.    Accordingly, plaintiff brings this action pursuant to the ADA-AA to recover all available relief in law, including but not limited to: (i) a judgment from this Court that defendant's actions were unlawful; (ii) back pay; (iii) compensatory damages in whatever amount she is found to be entitled; (iv) reinstatement, or in the alternative front pay in the event

- 1 -

Complaint-- Jennifer Johnson

reinstatement is not practical; (v) an equal amount as liquidated damages, other monetary damages; (vi) an award of costs and reasonable court fees; and (vii) punitive damages to the extent available; (viii) pre-judgment and post-judgment interest; and (ix) a jury trial on all issues so triable.

## JURISDICTION AND VENUE

3.     This court has original and exclusive jurisdiction over plaintiff's claims pursuant to 28 U.S.C. §1331, in that the matters in controversy are brought pursuant to Title I of the Americans with Disabilities Act of 1990 and the ADA-AA of 2008; 42 U.S.C. §12101 and 42 U.S.C. §12112(a), (b) and (d)(4) as it pertains to "Discrimination"; as implemented by 29 CFR Part 1630.14(b)(3), (c) & (d) as it pertains to adverse employment actions, employers and medical examinations and interventions.

4.     Venue is proper in this judicial district under 28 U.S.C. §1391 because defendant does business in this judicial district and the acts complained of took place in this judicial district.

5.     Plaintiff timely filed a charge of Discrimination against the defendant with the Equal Opportunity Employment Commission (EEOC) on or about the date of September 23, 2021.

6.     On or about February 16, 2022, the EEOC issued plaintiff a Dismissal and Notice of Right to Sue against defendant with regards to this matter. A copy of the Right to Sue letter is attached as Exhibit A – 8.

7.     Plaintiff has exhausted the administrative remedies available to her.

8.     Plaintiff files her complaint within 90 days of the EEOC's issuance of the notice of right to sue.

## PARTIES

9.     Plaintiff, Jennifer Johnson, resides in East Elmhurst, New York at the address of 22-46 79 St. Apt. 3A and is a qualified individual with a disability within the meaning of the ADA-AA.

Complaint-- Jennifer Johnson

10. Plaintiff was an employee of the defendant, which is a "covered entity" within the meaning of the ADA-AA.

11. Defendant's principal place of business is located at One Gustave Ave L. Levy Place New York, NY 10029.

12. At all times material to this action, Plaintiff was an "employee" of defendant within the meaning of the ADA-AA.

13. At all times relevant, defendant was an "employer" as defined by 42 U.S.C. 12111(5).

14. From approximately November 20, 2006, until her termination on September 27, 2021, plaintiff was employed as an Emergency Department Registered Nurse.

15. At all times material to this action, plaintiff was perceived as having a disability as defined by 42 U.S.C. §12102 (1) (2) and (3) and was subjected to adverse actions prohibited under this chapter because of perceived physical impairments whether or not these perceived impairments limited or were perceived to limit major life activities.

16. Specifically, plaintiff was perceived as disabled with a contagious disease; was mis-classified as having an impaired immune system and an impaired respiratory system by Defendant; and was not allowed to work because of defendant's discriminatory perceptions, policies and procedures.

17. At all times material to this action, plaintiff was, and is, a "qualified individual" under the ADA-AA as a person who met the legitimate skill, experience, education, or other requirements of the employment position that plaintiff held, and who can/could perform the "essential functions" of the position plaintiff held with or without reasonable accommodation.

18. Additionally, defendant is not eligible for any exemption under the ADA-AA, and, indeed, did not seek or obtain an exemption.

19. At all times material to this action, defendant is/was an employer covered by the ADA-AA in that it employs more than 15 employees.

20. At all times material to this action, plaintiff was an employee entitled to be free from discrimination on the basis of a perceived disability under the ADA-AA.

- 3 -

Complaint-- Jennifer Johnson

PLAIN STATEMENT

21.    Defendant discriminated against plaintiff based upon perceived disability. When plaintiff objected, the defendant continued to impose accommodations; including but not limited to: medical examinations, medical interventions including mask-wearing; without first conducting an individualized assessment to determine if he was a direct threat. Defendant has used policies and procedures that harass, isolate, segregate, limit, classify, deny equal access and impose non-job-related medical exams and inquiries upon plaintiff. Defendant also retaliated against plaintiff by interfering with her rights, imposing punitive measures including isolation and medical examinations, withholding her pay, reducing her work hours and ultimately terminating her employment, which is prohibited under the ADA-AA.

STATEMENTS OF FACT

22.    The Americans with Disabilities Act Amendments Act ("ADA-AA"), 42 U.S.C. § 12101 et. seq., as amended is a remedial statute aimed at addressing and providing remedy in response to Congress's findings that discrimination against individuals with physical or mental disabilities persist in critical areas like employment, and our nation's goals with respect to individuals with disabilities is to assure equality of opportunity and participation. 42 U.S.C. § 12101(a)(1)-(8). The ADA-AA is meant to protect qualified employees, like plaintiff, from discrimination, harassment and retaliation in the workplace on account of a real or perceived mental or physical disability. 42 U.S.C. § 12112.

23.    Plaintiff advised defendant that she was being regarded as disabled by the defendant and that the defendant was making a record of this disability by mis-classifying her as substantially limited with impaired immune and respiratory systems affecting her ability to perform major life activities in the workplace including working, communicating with others, performing manual tasks, talking, and breathing without the use of mitigation measures.

24.    Plaintiff on many occasions duly noticed defendant of her good faith opposition to discriminatory policies and procedures.

25.    Under the ADA-AA an employer may not require an individual with disability to accept accommodations which such qualified individual chooses not to accept. 29 CFR 1630.9 (d).

- 4 -

Complaint-- Jennifer Johnson

This is especially pertinent when accommodations are imposed for a perceived and unproven disability.

26.    Under the ADA-AA an employer is required to conduct an individual assessment to determine whether an employee poses a 'direct threat' before it can impose any measures upon the employee.  29 CFR §1630.2 (r)

27.    Under the ADA-AA it is considered discrimination on the basis of disability if the employer limits, segregates, or classifies an employee in a way that adversely affects such employee because of the disability. 42 USC § 12112

28.    Under the ADA-AA an employer who discharges, disciplines, or discriminates against an employee in the manner described in subsection (a) is considered to have violated 29 CFR §1630.4 (a)

29.    Under the ADA-AA employers are prohibited from retaliating against individuals who oppose discriminatory activities or who make charges, testify, assist, or participate in any manner in an investigation, proceeding or hearing. 42 U.S.C. § 12203 and 29 CFR Parts 1630.12(a) and (b) and Parts 1630.13(b), (c), (d) and Part 1630.14(c) and shall be subject to the enforcement provisions relevant to such violations set forth in sections 42 U.S. Code § 12117,  42 U.S. Code § 12133 and 42 U.S. Code § 12188.

30.    Under the ADA-AA employers are prohibited from requiring medical examinations or making disability-related inquiries of employees unless such examination or inquiry is shown to be job-related and consistent with business necessity; 42 U.S.C. §12112(d)(4); 29 CFR §1630.13 (b).

31.    Under the ADA-AA, employers are prohibited from sharing non-job-related medical classification without any regard to confidentiality;  29 CFR §1630.14 (c)

32.    Plaintiff may proceed under the "regarded as" prong and the "record of" prong and this court has jurisdiction under the "regarded as" prong of the ADA-AA.

Complaint-- Jennifer Johnson

## 33.   GENERAL ALLEGATIONS

34.   At all times material to this action, defendant failed to comply with its duty under the ADA-AA once plaintiff validly notified defendant of plaintiff being regarded as disabled and misclassified as substantially limited and requested equal access under the ADA-AA.

35.   Defendant discriminated and retaliated against plaintiff for making a complaint that she was being regarded as disabled, thus asserting her entitlement to equal access under the ADA-AA.

36.   Defendant's policies and procedures are specifically implemented for the purpose of mitigating the disability which it regards plaintiff as having.

37.   Plaintiff requested the defendant to provide a copy of the individualized assessment [1] that it conducted to determine that plaintiff was a direct threat; however, defendant ignored the requirement and continued to demand that plaintiff participate in its "health control measures" or accommodations such as mask-wearing, medical examinations, inquiries and treatments under Emergency Use Authorization ("EUA").

38.   Rather than providing equal access or proving any exemption to the ADA-AA, defendant embarked on a series of adverse employment actions against plaintiff which were designed to deter plaintiff's good faith opposition to the policies and procedures.

39.   Defendant's policy and procedures limited plaintiff's right to invoke ADA-AA protections by refusing to recognize that Plaintiff could claim a reason under Federal law for refusing to comply with the policy and procedures.  Instead, defendant insisted that plaintiff could only claim a "medical" or "religious" exemption, which is interference with plaintiff's rights under the ADA-AA.

40.   Defendant also engaged in adverse employment actions when plaintiff claimed the right of informed consent and the right to refuse to take part in clinical trials and noticed defendant that all the imposed mitigation measures fall under an EUA period.

---

1 EEOC Technical Manual 2.2 (c)  "...the Supreme Court has stated and the Congress has reiterated, "society's myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairments."  The legislative history of the ADA indicates that Congress intended this part of the definition to protect people from a range of discriminatory actions based on "myths, fears and stereotypes" about disability, which occur even when a person does not have a substantially limiting impairment."

- 6 -

Complaint-- Jennifer Johnson

41.     Defendant's violation of the ADA-AA was not in good faith and was willful, and plaintiff sustained damages as a result of defendant's conduct including past and future earnings, lost opportunities and benefits, liquidated damages, emotional distress, and reasonable attorneys' fees and or costs.

42.     Plaintiff re-alleges each statement from the affidavit herein.

## COUNT I
### DISCRIMINATION UNDER THE ADA-AA FOR PERCEIVED DISABILITY

43.     Plaintiff incorporates each of the above statements of fact herein; the allegations contained in the paragraphs 1 through 42 and the plaintiff's supporting affidavit which is also re-alleged and incorporated herein by reference.

44.     Title I of the ADA prohibits employment discrimination on the basis of disability in all aspects of employment, in 29 CFR § 1630 et sequitur; and particularly §1630.4; § 1630.5.

45.     Plaintiff is a qualified individual under the ADA-AA.

46.     On July 18, 2020, defendant began regarding plaintiff as having the disability of a contagious disease and made a record of such disability by mis-classifying plaintiff as being substantially limited with an impaired immune system and an impaired respiratory system; and began requiring plaintiff to use mitigation measures to perform several major life activities in the workplace.

47.     The defendant has made no meaningful efforts to remediate itself on the law, and has only referred to statements made on the CDC's website, but this clearly does not qualify as an individualized assessment.

48.     Despite having knowledge of plaintiff claiming protected status under the ADA-AA, defendant continued to limit, segregate, classify plaintiff due to its perception of plaintiff as a person with a disability within the meaning of the ADA-AA.

49.     Defendant's responses to the requests made by plaintiff to cease the discrimination and harassment were in fact non-responsive, dismissive or harassing; a true and correct copy of each written communication is included with Exhibit A.

Complaint-- Jennifer Johnson

50.     Despite plaintiff's written notices, defendant continued without cessation to  harass the plaintiff based upon disability by sending plaintiff numerous communications coercing plaintiff  to  accept  various  accommodations  or  suffer  adverse  employment  actions All written communications are attached as Exhibit A.

51.     Defendant imposed accommodations upon the plaintiff which included isolation and segregation such as demanding plaintiff remain 6 feet away from co-workers; refusing her access to the work space; making her work remotely; segregating plaintiff to a part of the work space without due process.

52.     Defendant has failed to ensure the equal access or accessibility of the premises where plaintiff is assigned to work.  The plaintiff has thereby been prevented from enjoying equal access and the benefits of employment enjoyed by other employees.

53.     Defendant's "COVID-19 policies and procedures" classified plaintiff in such a way that plaintiff's employment opportunities were adversely affected and limited because defendant would not permit plaintiff to do her job without first submitting to defendant's accommodations ("mitigation measures").[2]

54.     Defendant classified plaintiff as "unvaccinated"[3]; widely shared this classification of the plaintiff with other employees without any regard to confidentiality[4]; and encourages employees to harass plaintiff with repetitive emails, intimidating interactions and threats of termination.

55.     An employer is entitled only to the information necessary to determine whether the employee can perform the essential functions of the job with or without reasonable accommodations and defendant has failed to identify any set of facts that would qualify under this limitation.

56.     Defendant has never conspicuously disclosed or gave legally adequate notice that complying with the COVID-19 mitigation measures ("accommodations") are an essential

_____

[2] prohibited by 29 CFR § 1630.5

[3] discrimination based upon physical condition

[4] prohibited by 29 CFR § 1630.13.

Complaint-- Jennifer Johnson

50. Despite plaintiff's written notices, defendant continued without cessation to harass the plaintiff based upon disability by sending plaintiff numerous communications coercing plaintiff to accept various accommodations or suffer adverse employment actions All written communications are attached as Exhibit A.

51. Defendant imposed accommodations upon the plaintiff which included isolation and segregation such as demanding plaintiff remain 6 feet away from co-workers; refusing her access to the work space; making her work remotely; segregating plaintiff to a part of the work space without due process.

52. Defendant has failed to ensure the equal access or accessibility of the premises where plaintiff is assigned to work. The plaintiff has thereby been prevented from enjoying equal access and the benefits of employment enjoyed by other employees.

53. Defendant's "COVID-19 policies and procedures" classified plaintiff in such a way that plaintiff's employment opportunities were adversely affected and limited because defendant would not permit plaintiff to do her job without first submitting to defendant's accommodations ("mitigation measures").[2]

54. Defendant classified plaintiff as "unvaccinated"[3]; widely shared this classification of the plaintiff with other employees without any regard to confidentiality[4]; and encourages employees to harass plaintiff with repetitive emails, intimidating interactions and threats of termination.

55. An employer is entitled only to the information necessary to determine whether the employee can perform the essential functions of the job with or without reasonable accommodations and defendant has failed to identify any set of facts that would qualify under this limitation.

56. Defendant has never conspicuously disclosed or gave legally adequate notice that complying with the COVID-19 mitigation measures ("accommodations") are an essential

---

2 prohibited by 29 CFR § 1630.5

3 discrimination based upon physical condition

4 prohibited by 29 CFR § 1630.13.

- 8 -

Complaint-- Jennifer Johnson

function of the job of Emergency Department Registered Nurse; and the measures have never previously been an essential function of Plaintiff's job.[5]

57.   Plaintiff claimed her right not to provide any medical information that is not related to the performance of her job duties.

58.   Defendant limited the accommodation measures[6], such as examinations; disclosures of medical records that were not job-related; experimental injections; medical interventions; equipment or products; to only those chosen by defendant. Additionally, defendant failed to prove that there are no other accommodations available which do not require injections, medical devices and medical examinations.

59.   If plaintiff had previously made at least one request for reasonable modifications, plaintiff has since withdrawn such request.

60.   Additionally, the so-called "vaccines" that are being promoted as vaccines do not actually prevent transmission or infection of any contagious disease, specifically regarding the so-called "COVID-19" or "SarsCOV2" purported "diseases".

61.   The ADA-AA also protects individuals such as plaintiff for whom submitting to certain accommodation measures would create impairments. The accommodations include, but are not limited to, taking experimental injections under Emergency Use Authorization (EUA) which are being promoted as "vaccines" but which are not legally vaccines; submitting to repetitive, non-job-related medical examinations (nasal tissue testing, temperature checks); being placed under isolation, segregation and quarantine without due process; using medical devices for mitigation measures[7] (masks); disclosing Plaintiff's medical records and history for non-job-related matters and participating in clinical trials and epidemiological experiments as a condition of employment.

62.   Plaintiff requests that this court take judicial notice of Section 201(h) of the Food, Drug and Cosmetic Act and its Final Guidance titled, "Classification of Products as Drugs and Devices & Additional Product Classification Issues: Guidance for Industry and FDA

5 29 CFR 1630.2 definition "Essential Function": "(i) ....the reason the position exists is to perform that function."
6 29 CFR Part 1630.2(j)(5)(i)
7Section 201(h) Food, Drug & Cosmetic Act

- 9 -

Complaint-- Jennifer Johnson

Staff", published in September of 2017, in which the Food & Drug Administration defines wearing a mask for mitigation purposes as a medical device and the application of a medical device or contrivance. A true and correct copy of this is included as Exhibit B.

63.    Plaintiff further requests judicial notice of the fact that the Food & Drug administration has never approved wearing such face masks, but only "authorized" them without any supporting medical or clinical data establishing any medical necessity or efficacy for wearing such contrivances.

64.    Plaintiff requests that the court take judicial notice of the official mortality rates of the State of New York and the United States for the years from 2017, 2018, 2019 and 2020 in which the standard deviation is zero, the very definition of no verifiable "pandemic".

65.    Plaintiff has been damaged by defendant's violation of the ADA-AA and has suffered damages, which include past and future earnings, lost opportunities and benefits, and emotional distress.

66.    The conduct of defendant and its agents and employees proximately, directly, and foreseeably, injured plaintiff, including but not limited to, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

67.    The conduct of defendant was so willful and wanton and in such reckless disregard of the statutory rights of plaintiff so as to entitle her to an award of punitive damages against defendant, to deter it, and others, from such conduct in the future.

68.    As a result of Defendant's actions Plaintiff has experienced discrimination, segregation, isolation.

69.    Plaintiff is entitled to any and all relief permitted under the ADA-AA, 42 U.S.C. § 12117(a), including equitable relief.

70.    WHEREFORE, Plaintiff respectfully requests entry of:

    a.    judgment in his favor and against defendant for violation of the anti-discrimination provisions of the ADA-AA;

- 10 -

Complaint-- Jennifer Johnson

b.      ordering defendant to comply with the requirements of Title I of the Americans with Disabilities Act, 42 U.S.C. §12101; and

c.      ordering defendant to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct and to eliminate, to the extent practicable, the effects of such conduct.

d.      judgment in his favor and against defendant for actual and compensatory damages, including lost earnings, front pay, and/or all actual monetary losses suffered as a result of defendant's conduct;

e.      judgment in his favor and against defendant for his reasonable attorney fees, costs and litigation expenses;

f.      judgment in his favor and against defendant for punitive damages; and

g.      an order granting such other and further relief as this Court deems just and equitable under the circumstances of this case.

71.    Plaintiff demands a jury trial.

## COUNT II
## INTERFERENCE/RETALIATION UNDER THE ADA-AA

72.    The ADA-AA also prohibits employers from retaliating against individuals who oppose discriminatory activities or who make charges, testify, assist, or participate in any manner in an investigation, proceeding or hearing under the ADA, Title 42 U.S.C. § 12203 and 29 CFR Parts 1630.12(a) and (b) and Parts 1630.13(b), (c), (d) and Part 1630.14(c).

73.    Plaintiff incorporates the above statements of fact and the allegations contained in the paragraphs 1 through 42 herein and plaintiff's supporting affidavit which is also re-alleged and incorporated herein by reference.

74.    In June of 2021, defendant began unceasingly to retaliate against plaintiff despite plaintiff's reasonable good faith belief that she was exercising protected opposition to discrimination and claiming rights protected under the ADA-AA.

75.     The plaintiff was threatened to be terminated because of her unvaccinated condition and has successfully stated a violation of the Act simply because she has been subjected to an action prohibited under the law because of perceived physical impairment.

76.     Defendant continued to threaten the plaintiff with suspension, dismissal, and termination even after it was aware of a pending EEOC investigation and plaintiff's protected opposition status.

77.     Defendant coerced plaintiff to submit to the accommodation measures, medical interventions and examinations and other health control measures, even though defendant was duly advised by plaintiff that she was not subject to any health control measures by any court order, and that the defendant was not empowered by any court order or other legal duty to impose such interventions, examinations or control measures upon plaintiff. [8]

78.     Defendant  threatened plaintiff with the termination of employment then terminated her employment because of a perceived disability and as a result of classifying plaintiff as "unvaccinated".

79.     Defendant's notices to plaintiff failed to include conspicuous notice as to the manner in which its accommodations ("Covid policies and procedures") are related to the performance of plaintiff's essential job functions, and also did not mention plaintiff's right of refusal under EUA guidelines[9].

80.     Despite having knowledge of plaintiff claiming protected status under the ADA-AA, defendant terminated plaintiff's employment due to plaintiff's opposition to discriminatory policies and procedures.

81.     Defendant also failed to give notice of plaintiff's right to refuse defendant's accommodations under the ADA-AA[10],  and failed to advise plaintiff of her right to informed consent.

---

8  See California Public Health Emergencies Bench Book

9 Title 21, Chapter 9 V, Part E §360bbb–3a. Emergency use of medical products.

10 29 CFR Part 1630.9 (d) & (e)

- 12 -

Complaint-- Jennifer Johnson

82.    At all times material to this action, defendant interfered with the exercise of plaintiff's rights under the ADA-AA.

83.    As a result of defendant's intentional, willful and unlawful acts by retaliating against plaintiff and interfering with plaintiff's rights under the ADA-AA, plaintiff has suffered injury and damages.

84.    The injury suffered by plaintiff is thereby concrete and particularized and it is actual and imminent.   The injury alleged in the complaint, including the pleading and exhibits, clearly sets forth a set of facts that actually occurred and are not conjectural or hypothetical. The injury described therein is at least fairly traceable to the challenged action, conduct and policies of defendant.

85.    The harm (injury) already suffered by plaintiff includes, but is not limited to, having to choose between waiving rights to: medical privacy, informed consent, refusal to take part in clinical trials, and be free of discrimination and retaliation OR having plaintiff's employment terminated.   Once violated, these rights cannot be recovered.

86.    Defendant's policies and procedures demonstrate soundly and convincingly that it intends to inflict future harm against plaintiff based upon perceived disability; it fully intends to continue these policies and it fully intends to continue retaliating against plaintiff as alleged herein.

87.    As a result of defendant's actions the plaintiff has experienced retaliation, coercion, interference, termination and disruption in plaintiff's career.

88.    Defendant's efforts were to terminate plaintiff, rather than to provide equal access, per defendant's duty, and were not objectively or subjectively in good faith, therefore plaintiff is entitled to liquidated damages or other monetary damages, including punitive damages to the extent available.

89.    WHEREFORE, Plaintiff respectfully requests entry of:

a.       ordering defendant to comply with the requirements of Title I of the Americans with Disabilities Act, 42 U.S.C. §12101; and,

b.    take such affirmative steps as may be necessary to prevent the recurrence of any retaliation, coercion, interference and intimidation and to eliminate, to the extent practicable, the effects of such conduct.

c.    reinstatement, or, in the alternative, front pay in the event reinstatement is not practical;

d.    judgment in his favor and against defendant for actual and compensatory damages, including lost earnings, front pay, and/or all actual monetary losses suffered as a result of defendant's conduct;

e.    judgment in his favor and against defendant for his reasonable court fees and litigation expenses;

f.    judgment in his favor and against defendant for punitive damages; and

g.    Assess a civil penalty against the defendant in an amount authorized by 42 U.S.C. §12101 to vindicate the public interest and make the plaintiff whole; and

h.    an order granting such other and further relief as this Court deems just and equitable under the circumstances of this case.

90.    Plaintiff demands a jury trial.

DATED this 14 day of May 2022.

_Jennifer Johnson_
Jennifer Johnson, Plaintiff

- 14 -

Complaint-- Jennifer Johnson

Jennifer Johnson,
Plaintiff in Propria Persona
22-46 79 St. Apt. 3A
East Elmhurst, NY 11370
718-791-8621
Saynototheshot2021@protonmail.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
225 Cadman Plaza East; Brooklyn, NY 11201

JENNIFER JOHNSON
    PLAINTIFF

v.                                                CASE NO. _____

MOUNT SINAI HOSPITAL GROUP, INC
    DEFENDANT
_____/

AFFIDAVIT IN SUPPORT OF COMPLAINT

STATE OF NEW YORK          )
                           )ss
COUNTY OF QUEENS           )

1.     I, Jennifer Johnson, do hereby solemnly affirm that the statements herein are true and correct in substance and in fact and that I have personal knowledge of each.

2.     I have been harassed at my job, was discriminated and retaliated against based on disability for refusing to accept my employer's accommodations for regarding me as impaired in my immune system and impaired in my respiratory system.

3.     I am absent and without evidence of any information from any health officer identifying myself as having any communicable disease or having been exposed to any toxic substance.

4.     I am absent and without knowledge of any evidence or court order, obtained by any petition of the Department of Health or a public health officer, that was based upon any physician's affidavit in which I have been identified as having any communicable disease or having been exposed to any toxic substance.

5.     I am absent and without knowledge of any evidence of any court order determining that I am or have been a direct threat to anyone.

6. I am absent and without knowledge of any evidence of any individualized assessment required by law that has determined that I am or have been a direct threat to anyone.

7. I am absent and without knowledge of any evidence of any court order imposing any terms of isolation or quarantine or other measures upon myself.

8. I have previously and timely disclosed and duly noticed the defendant of a prior existing disability, and that the assertions made in the complaint are true and correct to the best of my knowledge, information and belief.

9. I have been regarded as having a disability and I have a disability which precludes me from wearing a face covering for medical reasons and for reasons of self-care, breathing, and communication. I have been diagnosed with conditions that contraindicate wearing a mask or limiting my oxygen or re-breathing my expelled bacteria. I understand that I have the right to make my own health choices and that no law has been suspended regarding my right to Informed Consent during this time and I have not been diagnosed with an infectious disease.

10. Since November 20, 2006, I have been employed by the Emergency Department at Mount Sinai Hospital Queens ("MSHQ") as a Per-Diem Registered Nurse.

11. Beginning in July 2020, my employer began asking me to use lots of mitigation measures for a contagious disease it perceived me as having. I have been required to wear an N-95 Mask for the entirety of all of my 12-14 hour shifts. Wearing N-95 masks at all times is cumbersome, they are uncomfortable and hot to wear. They make it difficult to breathe and I have often felt dizzy while wearing them. I experience difficulty concentrating and I have noticed increased forgetfulness since wearing N-95 masks. The masks also make it difficult to communicate. Also, contrary to any science that I have ever been taught, we are now being told that masks, instead of being single use items, can now be repeatedly used not only throughout the entire shift but sometimes for a week at a time and are to be stored in paper bags when not in use.

12. When working directly with suspected COVID patients, I also have had to wear plastic eye shields and a face shield over the mask. The eye shields often become foggy and this makes it difficult for me to see. I have experienced anxiety, feelings of panic and claustrophobia while wearing full protective gear. I also am made to wear a full, plastic or paper gown over my uniform and the gowns make me hot and uncomfortable.

My employer has a new policy that no more than three fully masked people may share the

break room at any given time. This environment is so uncomfortable that I often spent my lunch hour outdoors even in inclement weather. I feel isolated and segregated from my co-workers.

13.     I discovered that contrary to news reports that hospitals were being overwhelmed with Covid patients, Mount Sinai Hospital Queens was "normal" busy. Rather than huge amounts of people sick and dying of Covid, there were just patients that had a variety of illnesses. Beginning on July 18, 2020, MSHQ began asking me to input my medical information before every shift and I was told to take and record my temperature, and list my "vaccine" status on the Red Cap site which is a digital tracking system. I complied with entering my information into the tracking system under duress in order to gain access to my workplace.

14.     On June 5, 2021, Bernadette Springer, Clinical Nurse Manager, demanded that I submit to a "COVID test". This was reportedly due to a COVID outbreak in the hospital that was not in my unit and all staff members had to be mandatorily tested for COVID in order to work that day. She did not give me any information on the risk/benefit analysis of this mitigation measure. I was never told I had a right to informed consent and was just expected to comply. The fact that COVID testing is allowed under an Emergency Use Authorization (EUA's), denotes that informed consent is required from the participant. I refused the test based on my gut feeling that forcing a test on someone who was healthy was not right. This test was not related to the performance of my essential job functions so I also felt it was a discriminatory request for my employer to make and I refused on this basis. I was pulled off the unit and brought into Bernadette Springer's office. After a terse telephone conference call with Jonathan Nover, ED Supervisor in the presence of Ms. Springer. He immediately retaliated against me for opposing a discriminatory policy in good faith and refused to let me work that day's shift and he punished me further by canceling two additional shifts.

15.     Within the next few days, I mailed Norma Calame, Director Human Resources, a letter (Exhibit A-1) explaining that since the "COVID Testing" was being allowed under Emergency Use Authorization it required informed consent. I let her know that I had been penalized by having shifts canceled for claiming my rights. Ms. Calame never responded to me.

16.     On June 7, 2021, I checked with my union and learned that my union would not protect members against mandatory testing.

17.     MSHQ canceled my June 12, 2021 and June 19, 2021 shifts to punish me for claiming my rights. In fact, I believe management falsified the ACCU-Staff record to make it look as though I

canceled my own shift on June 19, 2021 however, the protocol is that I would have contacted the nursing office if I had "canceled" which I was never did. The

canceling of my shifts made me unsure as to whether I still had a job and I asked for a meeting with Jonathan Nover, ED Supervisor, Francelia Thomas, Day Clinical Nurse Manager & Johane Desruisseaux, RN Union Delegate which took place on June 24, 2021. I was informed that I could return to work but that mandatory weekly "COVID testing" for unvaccinated employees was going to be a requirement in the future. I was also given a written warning which was entered into my personnel file titled "Final Warning" (Exhibit A-2) I started the process of disputing this through my union but my grievance remains unresolved.

18.    On July 3, 2021, I became aware that my co-worker, Unice Benjamin RN who had also refused "mandatory" COVID testing, was allowed to work and has experienced no negative consequences for her refusal. I believe I was treated differently because I raised the issue of my rights and made my opposition to discrimination clear. (Exhibit A-3)

19.    I informed Johane Desruisseaux, RN Union Delegate, that I had proof that Unice Benjamin RN had also refused testing without facing any consequences.

20.    On July 31, 2021, I learned verbally in the meeting led by Sarah Hernandez, Night Shift Charge Nurse that starting on September 1, 2021 I must either be "vaccinated" or submit to weekly "COVID testing" or I would be terminated.

21.    I was given the deadline of September 13, 2021 to get experimental injections or I would be placed on "unpaid leave" starting September 20, 2021 and then terminated the following week on September, 27, 2021.

In my professional capacity, I have been aware that there are daily reports of people being injured or dying from the "COVID vaccine" and this is listed on the CDC's Vaccine Adverse Reporting System (VAERS) which I personally monitor. I have personally had to report 3 patients who were injured by a "Covid vaccine" to the VAERS website in the 6 months prior to my termination. In my professional opinion, I consider the experimental injections, which are still in clinical trial phase, to be unsafe.

22.    On August 7, 2021 I walked into the hospital's lobby expecting to find the person that checks our Red Cap (COVID digital tracking system) response to gain entry into the building, but that person was not present. I asked the heavy set security guard who was on duty, what was I supposed to do? He told me that MSHQ wasn't doing Red Cap Tracking anymore. Instead, once you get "vaccinated" you are given a sticker and the "vaccine" sticker is now

needed to gain entry. The guard asked me to show my sticker. He said, "You don't have the vaccine?" I informed him that he wasn't allowed to ask me that and he waived me into the building.

23. On August 12, 2021, Georgette Rghatzis, Admitting Clerk called me on the phone and told me she had just learned on the news that Mount Sinai Hospital was mandating all workers to get "vaccinated" by September 13, 2021.

24. On August 18, 2021, I emailed Norma Calame, HR, letting her know I had questions about how mitigation measures under Emergency Use Authorization could be mandated. She did not respond to me. (Exhibit A-4)

25. On August 23, 2021, I sent Norma Calame, HR a written "Notice of employment discrimination and retaliation based upon disability." I claimed that since my employer was regarding me as disabled with a contagious disease without any assessment I was claiming my right to protection under the ADA. I also claimed my right to informed consent and my right to refuse experimental medical treatments. I asked for MSHQ proof of liability insurance and proof of MSHQ's legal duty to protect me from a contagious disease. (Exhibit A-5)

26. On August 24, 2021, I called the HR office and left a message with the HR assistant, Tina, requesting an intake meeting with Ms. Calame to discuss on-the-job discrimination based upon disability. I also called on August 25 to set up a meeting. Then I received an email from Normal Calame, HR, stating that she was reviewing my complaint. We eventually decided on September 7, 2021 at 4:00PM for a meeting.

27. On September 7 th we met and I went over the discrimination I had experienced and how it had been affecting me. She did not seem trained in the ADA and I felt I needed to speak with someone who had a better understanding of what my employer's responsibilities were once I claimed discrimination based upon being regarded as disabled. I let her know that I felt my employment was threatened and that I had no intention of resigning and wished to speak to the hospital's ADA specialist. Ms. Calame agreed that she would provide me with that information as well. I audio taped the meeting.

28. On September 10, 2021, I received a call from Norma Calame, HR. She suddenly claimed that she was the ADA specialist for the hospital. I told her that I couldn't work with her because she didn't understand the issues I was raising. She said she would have Carol Moutaftsis, HR Manager, call me back.

29. On September 13, 2021, Carol Moutaftsis, HR Manager called me but she had no idea why we were speaking. I restated everything I had discussed with Norma Calame. Carol did

not understand the issues and could only suggest that I call Marie Ty, my 1199 Union Administrative Organizer, to inquire about the status of my grievance.

30. On September 15, 2021, I learned on the internet that a Federal Judge issued an emergency restraining order on the NYS Mandatory Vaccine. I had also been hearing reports on the internet that Mount Sinai would not comply with the restraining order.

31. On September 17, 2021, I read a Mount Sinai statement presumably posted by a Mount Sinai employee, on the social media site, Telegram, that stated that Mount Sinai will honor the restraining order but non-vaccinated employees will continue to require weekly testing until the matter is sorted out legally.

32. I was never contacted by Mount Sinai Hospital Queens directly. I did not know if I would be permitted to work on September 18, 2021 as scheduled.

33. On September 18, 2021, I was summoned to the office of Julia Oh-Murray, Assistant Director of Nursing and she handed me termination papers to sign which would be effective on September 27, 2021. She also demanded that I turn in my work ID card. I did not sign the papers. There was still an hour left in my shift and I didn't want to abandon or be accused of abandoning my patients, so I returned to the ER and finished the remainder of my shift. Ms. Oh-Murray was in agreement with that. I was also informed that my health insurance would be good for 30 days after the date of my termination on September 27, 2021. (Exhibit A-6)

34. On September 22, 2021, I submitted an EEOC inquiry.

35. On September 23, 2021, I submitted my EEOC Charge of Discrimination against Mount Sinai Hospital Queens. (Exhibit A-6)

36. On September 24, 2021, I mailed a "Notice of wrongful termination" to Kenneth L. Davies, the CEO of Mount Sinai Hospital in Queens. (Exhibit A-7)

37. In late September 2021, I applied for Unemployment from the NYS Department of Labor. I was denied UI benefits.

38. On October 26, 2021, both my daughter and I had extensive lab work done at Quest Diagnostics, presumably to be covered by my 1199/National Benefit Fund Insurance policy that I received through my employment at Mount Sinai Hospital Queens. (Exhibit A-8).

39. On October 28, 2021, received a mailing dated October 8, 2021, but received today (October 28, 2021) from 1199/ National Benefit Fund (insurance company) that my health care coverage was canceled on October 20, 2021. (Exhibit A-9)

40. On October 29, 2022 – November 1, 2022, I attempted to resolve the insurance coverage issue by sending emails to MSHQ HR Department. They refused to provide assistance despite giving misleading and conflicting information. (Exhibit A-10)

41. On February 16, 2022, I was sent my Right To Sue letter from the EEOC regarding EEOC Charge Number 520-2021-0523. (Exhibit A-11)

42. About February 16, 2022, after receiving notices from both 1199 (Insurance Company) and Quest Laboratory, that 1199 would not pay for lab work done on October 26, 2021, for both my daughter (Eden Lefebvre) and I, I decided to pay for it and seek reimbursement for this via legal action. (Exhibit A-12)

43. On March 25, 2021, I sent an email and evidence packet to both MSHQ (via Normal Calame, HR & Carol Moutaftsis, HR) and the NYS Unemployment Appeal Board to fight my unemployment denial.

44. On March 29, 2022, I had an unemployment appeal hearing with Judge Schneider, who informed me that my employer, MSHQ was refusing to pay out unemployment because theay had charged me with misconduct. My employer was not present at this hearing. Judge Schneider changed the reason to "voluntary Quit" at the time of the hearing. He offered that the hearing be rescheduled so I could prepare my evidence for this change. I accepted the offer and was given a new hearing date of April 13, 2022.

#4

45. The documents included with Exhibit A are true and correct copies of the originals.

_Jennifer Johnson_
**Jennifer Johnson, Affiant**

**STATE OF NEW YORK** )

)ss

**COUNTY OF QUEENS** )

Subscribed and Sworn to before me a notary public this 14ᵗʰ day of May, 2022.

5/14/22

_____
**Signature of Notary**                **[ls]**

GARY HART
Notary Public, State of New York
No. 01HA508824
Qualified in Nassau County
Commission Expires November 17, 20__

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————

JENNIFER JOHNSON,

               Plaintiff,

     -against-

MOUNT SINAI HOSPITAL GROUP, INC.,

            Defendant.

———————————————————

No. 22-CV-02936 (AMD)(JRC)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

AKERMAN LLP
Rory J. McEvoy, Esq.
Cassidy Mara, Esq.
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
T: (212) 880-3800
rory.mcevoy@akerman.com
cassidy.mara@akerman.com
Attorneys for Defendant

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

APPLICABLE LEGAL STANDARD ..................................................................................... 4

ARGUMENT ........................................................................................................................ 5

POINT I      PLAINTIFF'S CAUSE OF ACTION FOR PERCEIVED
              DISABILITY SHOULD BE DISMISSED BECAUSE
              SHE FAILS TO ALLEGE THE ESSENTIAL ELEMENTS
              OF THAT CLAIM ................................................................................ 5

POINT II     PLAINTIFF'S CAUSE OF ACTION FOR RETALIATION
              SHOULD BE DISMISSED BECAUSE SHE FAILS TO
              ALLEGE THE ESSENTIAL ELEMENTS OF THAT CLAIM ........................... 6

POINT III    PLAINTIFF FAILS TO ALLEGE THAT SHE HAS AN
              ADA-QUALIFYING DISABILITY OR THAT THERE
              IS A RECORD OF HER BEING DISABLED ....................................... 9

     A.     Plaintiff Does Not Allege A Physical Or Mental Impairment
           That Substantially Limits One Or More Major Life Activities .................................... 9

     B.     Plaintiff Does Not Allege A Record of Disability ....................................... 11

CONCLUSION ....................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)......................................................................................4

*Beckerich v. St. Elizabeth Medical Ctr.,*
563 F. Supp.3d 633 (E.D. Ky. 2021),
reconsideration denied, No. 21-CV-105, 2021 WL 4722915 (E.D. Ky. Sept. 30, 2021)......7, 8

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)......................................................................................4

*Best v. DiTech Holding Corp.,*
407 F. Supp. 3d 210 (E.D.N.Y. 2019) ...........................................................4

*Brand v. Narco Freedom, Inc.,*
No. 15-CV-5021, 2018 WL 4443129 (E.D.N.Y. Aug. 30, 2018),
*report and recommendation adopted,* 2018 WL 4425939 (E.D.N.Y., Sept. 17, 2018) ...........4

*Capobianco v. City of New York,*
422 F.3d 47 (2d Cir. 2005)............................................................................10

*Dancause v. Mount Morris Cent. Sch. Dis.,*
590 F. App'x 27 (2d Cir. 2014) .....................................................................10

*Duplan v. City of New York,*
888 F.3d 612 (2d Cir. 2018)..........................................................................6

*Earl v. Good Samaritan Hosp. of Suffern,*
No. 20-CV-3119, 2012 WL 4462413 (S.D.N.Y. Sep. 28, 2012)....................11

*Freund v. Cty. of Nassau,*
No. 15-CV-6180, 2017 WL 750480 (E.D.N.Y. Feb 24, 2017) ......................10, 11

*Garrett v. Garden City Hotel, Inc.,*
No. 05-CV-0962, 2007 WL 1174891 (E.D.N.Y. Apr. 19, 2007) ...................9

*Jaeger v. N. Babylon Union Free Sch. Dist.,*
191 F. Supp. 3d 215 (E.D.N.Y. 2016) ...........................................................7

*Mattes v. ABC Plastics, Inc.,*
323 F.3d 695 (8th Cir. 2003) ........................................................................4

*Norman v. NYU Langone Health Sys.*,
    492 F.Supp.3d 154 (S.D.N.Y. 2020).........................................................................10

*O'Hailpin v. Hawaiian Airlines, Inc.*,
    No. 22-CV-00007, 2022 WL 314155 (D. Haw. Feb. 2, 2022) ...............................8, 9

*Preuss v. Kolmar Labs., Inc.*,
    970 F.Supp.2d 171 (S.D.N.Y. 2013)..........................................................................9

*Risco v. McHugh*,
    868 F. Supp. 2d 75 (S.D.N.Y. 2012)...........................................................................7

*Shklyar v. Carboline Co.*,
    No. 22-CV-391, 2022 WL 2867073 (E.D. Mo. July 21, 2022) ...................... passim

*Smith v. N.Y. Presbyterian Hosp.*,
    440 F.Supp.3d 303 (S.D.N.Y. 2020)..........................................................................9

*Together Emps. v. Mass Gen. Brigham Inc.*,
    No. 21-CV-11686, 2021 WL 5234394 (D. Mass. Nov. 10, 2021) ............................9

*Treglia v. Town of Manlius*,
    313 F.3d 713 (2d Cir. 2002)........................................................................................6

*Vega v. Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir. 2015).........................................................................................6

*We the Patriots USA, Inc., v. Hochul*,
    17 F.4th 266 (2d Cir. 2021), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) ............2

*We the Patriots USA, Inc., v. Hochul*,
    142 S.Ct. 734 (2021)...................................................................................................2

**Statutes**

42 U.S.C. § 12102.....................................................................................................5, 10

42 U.S.C. § 12103(1) ....................................................................................................10

42 U.S.C. § 12203(a) ......................................................................................................7

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .......................................................................4

**Other Authorities**

29 C.F.R. § 1630.2(k)(2)............................................................................................5, 11

10 N.Y.C.R.R. §2.61 ........................................................................................1, 2

## PRELIMINARY STATEMENT

Plaintiff Jennifer Johnson ("Plaintiff" or "Johnson"), a former Registered Nurse in the Emergency Department at The Mount Sinai Hospital ("Mount Sinai" or the "Hospital") (named herein as "Mount Sinai Hospital Group, Inc.") was terminated on September 27, 2021, for repeatedly refusing to get the COVID-19 vaccine, as mandated by the State of New York and required by Mount Sinai policy.

In July 2020, Mount Sinai began to require employees to enter medical information in a digital tracking system, including temperature and vaccine status. (Pl. Aff. ¶13). Johnson complied with this requirement. *Id.* In June 2021, Mount Sinai updated this requirement to require all employees to either be vaccinated or be tested. (Pl. Aff. ¶¶17, 20). Plaintiff complained for the first time after the June 2021 modification went into effect. (Pl. Aff. ¶ 14).

On August 12, 2021, Mount Sinai updated the policy again to require that vaccination would be mandatory and that employees needed to get their first shot by September 13, 2021, except for employees who were granted medical or religious exemptions. (Pl. Aff. ¶23). Employees who failed to get the first shot by that date would be subject to disciplinary action, up to and including discharge. Plaintiff does not allege that she sought a medical or religious exemption.

On August 26, 2021, 10 N.Y.C.R.R. §2.61 ("Section 2.61") was adopted. Section 2.61 requires hospitals (like Mount Sinai) to "continuously require personnel to be fully vaccinated against COVID-19, with the first dose for current personnel received by September 27, 2021..." 10 N.Y.C.R.R. §2.61(a)(1), (c). Personnel is defined to include employees "who engage in

activities such that if they were infected with COVID-19, they would potentially expose other covered personnel, patients or residents to the disease." *Id.* §2.61(2).[1]

Johnson worked in the Emergency Department at Mount Sinai with suspected COVID patients. (Pl. Aff. ¶¶10, 12). If she became infected with COVID-19, she would have potentially exposed other covered personnel and patients to the disease while working in the Hospital. As a result, Johnson met the definition of personnel under Section 2.61.

Pursuant to Mount Sinai policy and the New York State mandate, Johnson was given until September 13, 2021 to get the first dose of the vaccine. If she did not comply by that date, she would be placed on unpaid leave, and then terminated, if she did not comply by September 27, 2021. (Pl. Aff. ¶21). Plaintiff continued to refuse to be vaccinated despite several warnings. (Pl. Aff. ¶¶17, 20, 21, 23). Accordingly, on September 27, 2021, Johnson's employment was terminated. (Pl. Aff. ¶33).

Nevertheless, Johnson brings this action against Mount Sinai under the Americans with Disabilities Act (the "ADA") alleging that the Hospital perceived her as disabled. (Complaint ¶16). Plaintiff also claims that Mount Sinai retaliated against her for engaging in protected activity in violation of the ADA (Complaint ¶74).

Plaintiff's perceived disability claim should be dismissed because Mount Sinai did not perceive Johnson to be disabled with an ADA-qualifying disability. Plaintiff's conclusory allegations that Mount Sinai regarded her as having a disability are implausible. The materials attached to Johnson's Complaint make clear that Mount Sinai's vaccination policy was generally

---

[1] Healthcare workers and membership organizations challenged §2.61 in two (2) federal court actions. In November 2021, the Second Circuit held that the plaintiffs in those actions were not entitled to a preliminary injunction enjoining enforcement of §2.61. *We the Patriots USA, Inc., v. Hochul*, 17 F.4th 266 (2d Cir. 2021), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021). On December 13, 2021, the United States Supreme Court denied the plaintiffs' request for an injunction pending further appeal. *We the Patriots USA, Inc., v. Hochul*, 142 S.Ct. 734 (2021).

applicable to all Mount Sinai employees. (Complaint, Exhibit A p. 2; Pl. Aff. ¶¶12, 14, 23).
Nevertheless, Johnson alleges that, by implementing its vaccination policy and requiring her to
comply with it, Mount Sinai regarded her as having the disability of a contagious disease, an
impaired immune system, and an impaired respiratory system. (Complaint ¶16). To infer that
Mount Sinai regarded Johnson as having a disability would require inferring that the Hospital
regarded all of its employees as having a disability before they were vaccinated. This is not a
reasonable inference. Accordingly, Johnson has not plausibly alleged that Mount Sinai regarded
her as having a disability.

Johnson's retaliation claim should also be dismissed because (i) she did not engage in
protected activity; and (ii) there is no causal connection between her alleged protected activity
and her discharge. Mount Sinai required all employees to be vaccinated or face disciplinary
action (except those who received a medical or religious exemption). Thus, one would have to
infer that all employees who refused to be vaccinated and who were subject to disciplinary action
were retaliated against in violation of the ADA. There also can be no inference of retaliatory
intent where Mount Sinai had no choice but to comply with a government mandate requiring all
Hospital personnel to be vaccinated. (Complaint, Exhibit A pg. 2; Pl. Aff. ¶¶ 20, 23). In
addition, since July 2020, Mount Sinai updated its COVID protocols periodically throughout the
pandemic to respond to the shifting health and safety risks to employees performing patient-
facing work. Plaintiff did not complain until June 2021 about these updated protocols. (Pl. Aff.
¶¶13–14). Therefore, there cannot be a causal connection because Johnson did not complain
until after the COVID protocols were implemented. Finally, Plaintiff's termination in September
2021 is too remote in time from her June 2021 complaint to permit an inference of retaliation.

## APPLICABLE LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed if it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citing *Bell Atlantic Corp*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. The complaint must provide more than "labels and conclusions, and a formulaic recitation of the cause of action." *Id.*

Plaintiff's *pro se* status does not exempt her from the requirement that she plead a plausible claim of discrimination and retaliation. *See, e.g., Best v. DiTech Holding Corp.*, 407 F. Supp. 3d 210, 211 (E.D.N.Y. 2019) ("[E]ven *pro se* plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'") (citation and internal quotations omitted). This Court has consistently granted dismissal motions pursuant to Fed. R. Civ. P. 12(b)(6) even where the plaintiff is *pro se* on the grounds that the plaintiff failed to plausibly support her *prima facie* case. *See, e.g., Brand v. Narco Freedom, Inc.*, No. 15-CV-5021, 2018 WL 4443129 at *2 (E.D.N.Y. Aug. 30, 2018), *report and recommendation adopted*, 2018 WL 4425939 (E.D.N.Y. Sept. 17, 2018).

While a court must generally ignore materials that are outside the pleadings, a court may consider materials that are necessarily embraced by the pleadings and exhibits that are attached to the complaint. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

## ARGUMENT

### POINT I

### PLAINTIFF'S CAUSE OF ACTION FOR PERCEIVED DISABILITY SHOULD BE DISMISSED BECAUSE SHE FAILS TO ALLEGE THE ESSENTIAL ELEMENTS OF THAT CLAIM

Absent an actual or recorded disability, an employee may still be disabled under the ADA if the employee is "regarded as having such an impairment." 42 U.S.C. § 12102. To state a claim for disability discrimination based on having been regarded as having a disability, a plaintiff must plausibly allege that she "has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). (quoting 29 C.F.R. § 1630.2(k)(2)).

Courts have dismissed employees' discrimination claims based on the "regarded as" theory of disability discrimination where the employer, like here, applied its COVID-19 policies to all employees. *Shklyar v. Carboline Co.,* No. 22-CV-391, 2022 WL 2867073, at *5 (E.D. Mo. July 21, 2022) (complaint dismissed with prejudice because Plaintiff did not plausibly allege that Carboline regarded her as having a disability where COVID-19 policies were applied to all employees and, as a result, Plaintiff failed to plausibly allege the existence of an essential element of her discrimination claim: that she is disabled within the meaning of the ADA.).[2]

The allegation that Mount Sinai regarded Plaintiff as having a disability is both conclusory and implausible. It is clear from the Complaint and the materials attached to it that

---

[2] Notably, Johnson's Complaint and Affidavit is remarkably similar to the amended complaint and the affidavit in support of the original complaint in *Shklyar*. *See* McEvoy Declaration ¶¶ 2–3, Exs. 1–2. Indeed, many of the paragraphs in this Complaint and Affidavit are identical to those in *Shklyar*. This strongly suggests that Johnson copied, either in substance or word for word, the paragraphs in the *Shklyar* complaint and [cont'd on following page] affidavit. For the same reasons that the Court in *Shklyar* dismissed the complaint with prejudice, the Court here should dismiss Johnson's Complaint with prejudice.

Mount Sinai's COVID-19 policies were generally applicable to all Mount Sinai employees.

(Complaint, Exhibit A p. 2; Pl. Aff. ¶¶12, 14, 23). Johnson's allegation that she was perceived as

disabled is simply implausible in light of this general applicability. *See Shklyar,* 2022 WL

2867073 at \*5. To infer that Mount Sinai regarded Plaintiff as having a disability would require

inferring that Mount Sinai regarded all of its employees as having a disability before they were

vaccinated – yet another unreasonable inference. *Id*. Thus, Plaintiff has failed to allege an

essential element of her perceived disability claim – that Mount Sinai regarded her as having a

disability.

## POINT II

### PLAINTIFF'S CAUSE OF ACTION FOR RETALIATION SHOULD BE DISMISSED BECAUSE SHE FAILS TO ALLEGE THE ESSENTIAL ELEMENTS OF THAT CLAIM

To state a claim of retaliation, a plaintiff must show (i) that she participated in a protected

activity; (ii) known to the employer; (iii) the employer took an adverse employment action; and

(iv) a causal connection between the protected activity and the adverse employment action. *See*

*Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir. 2002). Moreover, for Plaintiff to

"adequately plead causation," she must "plausibly allege that the retaliation was a 'but-for' cause

of the employer's adverse action. *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018)

(citing *Vega v. Hempstead Union Free Sch. Dist.,*, 801 F.3d 72, 90-91, (2d Cir. 2015)) (internal

quotations omitted).

Plaintiff claims that she was "retaliated against based on disability for refusing to accept

[Defendant's] accommodations." (Pl. Aff. ¶2). Plaintiff's retaliation claim fails because (i) she

fails to allege that she engaged in protected activity; (ii) there could not possibly have been a

targeted retaliatory action against Johnson, and therefore no causation, because Mount Sinai did

not engage in any individual decision making regarding her – if an employee, subject to the New

York State mandate, like Plaintiff, did not provide proof of vaccination, and did not have a medical or religious exemption, they were terminated; (iii) she did not complain until June 2021 about COVID-19 policies that were first implemented in July 2020; and (iv) her complaints in June 2021 are too remote in time from her discharge more than three months later in September 2021 to permit an inference of retaliation.

Reduced to its essence (and despite their length), Johnson's claims amount to nothing more than her personal dislike of the vaccination requirement. This is confirmed by the fact that Plaintiff does not allege that she sought a medical or religious exemption to being vaccinated. 42 U.S.C. § 12203(a) (protecting employees when they exercise or enjoy "a right granted or protected" by the ADA). *See also Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 232 (E.D.N.Y. 2016) ("absent a claim of unlawful discrimination, general complaints about employment concerns do not constitute protected activity"); *Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012) ("Generalized complaints about a supervisor's treatment are insufficient.")

The conclusion is unavoidable that Plaintiff's refusal to be vaccinated was made for personal reasons. For example, Plaintiff alleges that a mandatory vaccination policy amounts to "participating in clinical trials and epidemiological experiments as a condition of employment." (Complaint ¶61). In *Beckerich v. St. Elizabeth Medical Ctr.*, 563 F. Supp.3d 633, 644 (E.D. Ky. 2021) (reconsideration denied, No. 21-CV-105, 2021 WL 4722915 (E.D. Ky. Sept. 30, 2021)), the Court said that a private employer's implementation of vaccination policies is not an infringement on an employee's individual liberties with respect to their personal choices. As the Court noted, "no Plaintiff in this case is being forcibly vaccinated." "Rather, the Plaintiff[] [is] choosing whether to comply with a condition of employment, or to deal with the potential

consequences of that choice." *Id.* Mount Sinai has not "forced" its employees to become vaccinated. Instead, it has presented its employees with a choice, as it was required to by New York State law – become vaccinated, or deal with the consequences of refusing to do so.

Plaintiff also failed to allege a causal connection between her alleged protected activity and the adverse action taken against her for two separate, independent reasons. First, there can be no retaliatory intent and, thus, no causation, where New York State required Mount Sinai to have its personnel vaccinated. Complying with a government mandate defeats any possible inference of causation.

Next, after Mount Sinai put COVID-19 policies into effect in July 2020, Plaintiff complied with those policies for almost a year, until June 2021. (Complaint, Exhibit A p. 2; Pl. Aff. ¶¶13–4). It was only after Mount Sinai updated those policies in June 2021 that Johnson objected to complying. *Id.* Even then, Mount Sinai gave Johnson numerous chance to comply. (Pl. Aff. ¶¶17, 20, 21, 23). Only several months later, after Plaintiff continued to refuse to comply did Mount Sinai terminate Johnson's employment – and the decision to terminate Johnson was made because Mount Sinai could not keep Johnson employed and comply with New York State law. This adverse action was taken pursuant to policies implemented before Plaintiff engaged in her alleged protected activity. Courts have repeatedly found that, where an adverse action is taken pursuant to policies implemented before the adverse action, it is not reasonable to infer that there was a causal connection between the complaint and the adverse action. *See Shklyar,* 2022 WL 2867073 at *6; *see also O'Hailpin v. Hawaiian Airlines, Inc.,* No. 22-CV-00007, 2022 WL 314155, at *11 (D. Haw. Feb. 2, 2022) ("Plaintiffs are unlikely to establish a prima facie case of retaliation ... because the adverse employment actions ... appear to be unconnected to their ... requests. Indeed, the vaccine policy was established, as well as the

8

consequences for failing to comply[,] ... before Plaintiffs submitted their ... requests."); *see also Together Emps. v. Mass Gen. Brigham Inc.*, No. 21-CV-11686, 2021 WL 5234394, at *20 (D. Mass. Nov. 10, 2021) (finding plaintiffs likely could not show a causal connection between protected activity and adverse employment action where defendant asserted that "plaintiffs [were] subject to unpaid leave and potential termination not because they requested exemption, but because they were not approved and remain[ed] noncompliant with the Vaccination Policy.").

Finally, Plaintiff's termination on September 27, 2021 is too remote in time from her first complaint, nearly four months earlier, on June 5, 2021 to permit an inference of retaliation. *See Smith v. N.Y. Presbyterian Hosp.*, 440 F.Supp.3d 303, 343 (S.D.N.Y. 2020) (3 and 4 months gaps between protected activity and adverse actions were insufficient) (collecting cases); *Preuss v. Kolmar Labs., Inc.*, 970 F.Supp.2d 171, 198 (S.D.N.Y. 2013) ("district courts in the Circuit have held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation") (internal quotations and citations removed) (collecting cases); *Garrett v. Garden City Hotel, Inc.*, No. 05-CV-0962, 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007) (same).

### POINT III

### PLAINTIFF FAILS TO ALLEGE THAT SHE HAS AN ADA-QUALIFYING DISABILITY OR THAT THERE IS A RECORD OF HER BEING DISABLED

#### A.  Plaintiff Does Not Allege A Physical Or Mental Impairment That Substantially Limits One Or More Major Life Activities

Although Johnson does not have a separate cause of action for disability discrimination, she makes passing reference to having a disability in her papers. (Pl. Aff. ¶¶8, 9) To the extent that Plaintiff seeks to assert such a claim it should be dismissed because she does not have an ADA-qualifying disability.  To survive a motion to dismiss, a plaintiff must allege that her

alleged disability "substantially limits one or more major life activities." *See Freund v. Cty. of Nassau*, No. 15-CV-6180, 2017 WL 750480, at \*4 (E.D.N.Y. Feb 24, 2017); *See also* 42 U.S.C. 12103(1). "Not every impairment is a 'disability' within the meaning of the ADA; rather, there are two requirements: the impairment must limit a major life activity and the limitation must be substantial." *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005) (citing 42 U.S.C. § 12102(2)(A)).

To satisfy this standard at the motion to dismiss stage, a plaintiff must allege that she suffers from a physical or mental impairment that substantially limits one or more major life activities. *Freund,* 2017 WL 750480, at \*4. *See also* 42 U.S.C. §12102(1).   A "major life activity" includes "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. §12102(2).

Johnsons does not allege that her alleged disability substantially limits a major life activity.  Plaintiff alleges that her objection to vaccination is based on her belief that she would be participating in clinical trials and epidemiological experiments. (Complaint ¶61).  Her objection to vaccination is not based on a physical or mental impairment that substantially limits one or more of her major life activities and thus, does not constitute a disability under the ADA. *See Norman v. NYU Langone Health Sys.,* 492 F.Supp.3d 154, 164–65 (S.D.N.Y. 2020) (allergic reaction to flu vaccine is not a disability under the ADA).  Accordingly, Johnson fails to state a claim for disability discrimination and, to the extent that Plaintiff seeks to assert such a claim, it should be dismissed. *See, e.g., Dancause v. Mount Morris Cent. Sch. Dis.,* 590 F. App'x 27, 28–29 (2d Cir. 2014) (affirming dismissal of disability discrimination claim because the plaintiff failed to sufficiently allege facts showing that she was disabled under the ADA); *Freund,* 2017

WL 750480, at *4 (dismissing disability discrimination claim because the plaintiff failed to allege that he was disabled within the meaning of the ADA); *Earl v. Good Samaritan Hosp. of Suffern,* No. 20-CV-3119, 2012 WL 4462413, at *5–6 (S.D.N.Y. Sep. 28, 2012) (same).

### B.   Plaintiff Does Not Allege A Record of Disability

Here again, Plaintiff does not allege a cause of action for disability discrimination based on a record of a disability, although Plaintiff makes vague references to such a record throughout her papers (Complaint ¶16). To the extent that Plaintiff seeks to assert such a claim, it should be dismissed because she has failed to plausibly allege, as required, that she has "a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having had such an impairment." 29 C.F.R. § 1630.2(k)(2). Courts have dismissed employee's discrimination claims based on the record of disability theory where the employee alleged her employer misclassified her as having a disability, but the employer applied COVID-19 policies and procedures to all employees. *See Shklyar,* 2022 WL 2867073 at *5 (finding that employee did not plausibly allege that employer misclassified her as having a disability where it applied COVID-19 policies and procedures to all employees and thus employee could not proceed under the record of disability theory, and dismissing the action for failure to state a claim for discrimination under the ADA).

Plaintiff's allegation that Mount Sinai made a record of her having a disability is conclusory and implausible. Mount Sinai applied its COVID-19 vaccination policies to all employees (as it was required to do by New York State law). (Complaint, Exhibit A p. 2 (requiring all employees face-forwarding patients be tested for COVID-19)); Pl. Aff. ¶14 (requiring all staff members to be tested). Accordingly, just like Plaintiff's allegation that she was "regarded as" having a disability by Mount Sinai, to infer that Plaintiff was misclassified as having a disability would require inferring that Mount Sinai misclassified all of its employees

11

before they were vaccinated as having a disability – yet another unreasonable inference. *See*

*Shklyar,* 2022 WL 2867073 at *5.

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

For all the foregoing reasons, Mount Sinai's motion to dismiss should be granted and the

Complaint should be dismissed in its entirety with prejudice.

Date:   New York, New York
        August 19, 2022

**AKERMAN LLP**

　　　/s/ Rory J. McEvoy
　　　Rory J. McEvoy
　　　Cassidy Mara

Jennifer Johnson,
Plaintiff in *Propria Persona*
22-46 79 St. Apt. 3A
East Elmhurst, NY 11370
718-791-8621
Saynototheshot2021@protonmail.com



#6

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK
### 225 Cadman Plaza East; Brooklyn, NY 11201

JENNIFER JOHNSON
    PLAINTIFF

v.                                        CASE NO. <u>22-CV-02936 (AMD)(JRC)</u>

MOUNT SINAI HOSPITAL GROUP, INC
    DEFENDANT
_____/

### RESPONSE TO DEFENDANT'S MOTION TO DISMISS
### AND MEMORANDUM OF LAW

The plaintiff responds to the defendant's motion to dismiss.

Laws do not conflict with each other.   The defendant's motion is based upon erroneous presumption that its policy is legal.  This was the same mistake made by CDC and the airlines.  In April 2022, <u>Health Freedom Defense Fund v Biden</u>, one of the determinations made by Judge Mizelle, sitting in an appellate tribunal, was that the CDC had no authority and likewise the airlines had no authority to impose the "COVID policies".

The defendant demonstrates its lack of understanding of disability law by admitting that it did receive notice from the plaintiff regarding her disability and further defendant's motion goes on to admit denying such disability without complying with any single provision of Americans with Disabilities Act.  The defendant's motion ignores the two prongs of the ADA, "regarded as" and "record of" and the defendant ignores the fact that it was the defendant itself that has made a record of the plaintiff's disability, and that the defendant proceeds to incorrectly deny such disability.

It is not rational to act as if everyone has a disability at the same time, and then impose medical interventions (accommodations such as mask-wearing and experimental vaccines) without any medical examination, physician's diagnosis or judicial oversight or

approval.  It is against public policy which requires evidence of a diagnosis that the plaintiff is a direct threat and the defendant never established any of these facts and its policies and practices were therefore not rational but discriminatory.

Not only did the defendant deny and ignore the plaintiff's claim for disability, it retaliated against the plaintiff for having made such a claim.  The defendant retaliated by continuing to attempt to impose its policy and punitive measures against the plaintiff based on disability and while this is clearly alleged in each count of the complaint, the defendant simply ignores it as if it was never written.

The defendant admits having failed or refused to conduct any individualized assessment to determine whether or not the plaintiff was a direct threat.  The defendant's policies were not equally applied to the plaintiff once she had given *notice* that she was in a protected class and engaged in a protected activity (claiming her rights and opposing a discriminatory policy).

Regarding defendant's citation of We The Patriots USA, Inc. v. Hochul, the State of New York never had the authority to impose vaccinations upon its residents in the first place (see plaintiff's arguments regarding 10 NYCRR §2.61) there were no grounds for the injunction sought by "We The Patriots"; moreover, this case was about "exemptions".  There are no exemptions to policies which do not create legal duties.  The "exemption" scheme is intended to trick people who are adversely affected by these illegal policies into making the incorrect legal defense and shifting the burden of proof away from the employer and onto themselves.  Johnson does not rely on requesting permission by trying to qualify for an exemption.  The exemption criteria themselves are not even disclosed, so the entire ruse is just that, a ruse to trick people into asking permission to do something or not do something for which they already have the right.  Johnson does not rely upon "exemptions"..  The attorneys for the plaintiff in "We The Patriots" case were simply incompetent and were likely collecting huge fees in exchange for helping to create some really bad case law.  10 NYCRR §2.61 has no relevance to Constitutional principles.  It depends solely upon voluntary participation as plaintiff has already explained in this reply.  Assuming that the regulation is legally binding upon its face, it fails to include any provision to disclose anyone's medical history or vital statistics, so there is no possible way to impose the regulation upon anyone who chooses to exercise his medical privacy rights.  If New York wants to amend this regulation and add more provisions, well then, we can step back and make a new argument, but as of right now, this

regulation created no new legal duty upon anyone.

Defendant claims or implies that its "Covid" policy is required by law...",  citing at one point, 10 N.Y.C.R.R. §2.61; however, this regulation has no provision that creates any new legal duty of care, nor any new authority to impose any measures upon the plaintiff.  It does not diminish or remove any rights that the plaintiff has to medical privacy, or the right to informed consent. This regulation is implemented during the Emergency Use Authorization (EUA) Period, which continues to this day with no published date of expiration and each "protocol" thereunder constitutes a clinical trial or an epidemiological experiment to which the plaintiff cannot be subjected to as a condition of his employment.

The defendant's motion fails to include any physician's affidavit as required by accepted standards of practice, including the use of standard precautions.

Accepted standards of practice are clearly set forth in the New York State Public Health Legal Manual, specifically as expressed under sections 1.22 and 1.32 - 1.36.

10 N.Y.C.R.R. §2.61 does not conflict with 18 NYCRR §515.2(13)(13) "Unlawful discrimination. Illegally discriminating in the furnishing of medical care, services or supplies based upon the client's race, color, national origin, religion, sex, age or handicapping condition."  These regulations also do not conflict with the defendant's legal duty to comply with federal disability law.

10 N.Y.C.R.R. §2.61 includes language that presumes employees (staff members), have a disability, such as being infected with a deadly contagious disease referred to by the term "COVID-19".  Therefore each and every member of the staff and each and every patient included in this regulation is thereby regarded as having a disability and thereby a part of a protected class under the Americans with Disabilities Act.

As expressed in the complaint, defendant's "Covid" policy is applied disproportionately by identifying groups of employees, such as those who are "vaccinated" and those who are "not vaccinated" and ignores the group of employees who invoke their rights under the ADA and further identifies another group of employees who claim to be exempted from such policy for medical or religious reasons.

Plaintiff is within the group of employees who has invoked rights under the ADA and is treated differently by the defendant than the other groups, such as those who defendant considers "vaccinated" and then "unvaccinated" and those it classifies as "exempt"

#6

for religious considerations and from those who it classifies as "exempt" for medical reasons".

Additionally, the regulation mis-classifies each staff member and each parent as having an impairment that can only be cured by participating in the vaccination programs described in the regulations.

Assuming for a moment that this regulation is legally binding upon the plaintiff, or upon the defendant, and contradicts disability law, <u>it has no provision that requires anyone to disclose his or her medical records, medical history, vital statistics, or waive his or her rights to informed consent</u>.  This regulation cannot be implemented unless a staff member or a patient voluntarily waives his or her medical privacy rights and rights to informed consent. This regulation has no force or effect of any legal duty or any legal authority erroneously described by the defendant.

On its face, 10 NYCRR §2.61, satisfies two prongs of the Americans with Disabilities Act; specifically, the "regarded as" prong and the "record of" prong, each of which has already been sufficiently alleged in the complaint.   The defendant's mistaken interpretation makes the case for the plaintiff.  This regulation is based upon the speculative and stereotypical presumption that *everyone has Covid.* (regarded as) and that the cure is the defendant's "Covid" policy (record of).  The burden of proof is on the defendant to conduct an individualized assessment of the plaintiff to determine if she is a direct threat, the plaintiff has no burden to prove that she is "medically exempt" from something that is not even a legal duty.  The plaintiff had no burden to prove her disability nor discuss it with anyone, especially since it was not job related and she was not asking for any modifications.  Again, this is all sufficiently alleged in the complaint.

Once again, laws do not conflict with each other.  In the "We the Patriots" case, 10 NYCRR §2.61 did not amend or repeal the Americans with Disabilities Act, and as you can obviously determine for yourselves, the regulation itself does not even attempt to violate anyone's right to medical privacy, it simply excludes those conditions and expects every person to just ignorantly waive his rights and comply.

In any case, the "We the Patriots" case does not, in any way, apply to Johnson for the reasons explained by the plaintiff here.

The defendant failed to avail itself of any exception or exemption to its legal duty to comply with the Americans with Disabilities Act.  It failed to describe or identify any set of

facts that would create any undue financial burden, for the defendant because, of the plaintiff's refusal of defendant's offered accommodations (its so called "Covid policy"). Additionally the defendant failed to identify or describe any set of facts establishing that the plaintiff's refusal of its accommodations (mask-wearing and vaccinations, etc.) would have fundamentally altered its normal business operations. These are three of the exemptions that the defendant could have relied upon in order to have legally imposed its so called "COVID policy"; yet the defendant refused or failed to make any attempt whatsoever to comply with the ADA in this manner.

Finally, the defendant had an additional potential exemption of which it failed to avail itself; the defendant failed to identify or describe any set of facts establishing that the claimed disability (of being regarded as disabled and being recorded as disabled) was BOTH transitory AND minor.

These four exemptions could have been used by the defendant as affirmative differences yet it failed to comply with the law so it has no defense. Simply denying that the plaintiff has a disability is actually illegal and violates disability law. The defendant's policy was not uniformly applied to the plaintiff, beginning from the moment the plaintiff notified the defendant of her disability. She was not required to discuss the nature of her disability because it was not related to her essential job functions and she had not requested any modifications, moreover the defendant failed to give any conspicuous notice as to the manner in which its so called "Covid policy" was directly related to the plaintiff's essential job function.

It is not a defense for the defendant to deny regarding the plaintiff as having a disability. In fact, this admits the defendant's discriminatory practices and retaliation against the plaintiff. It is legally sufficient that the plaintiff simply inform her employer that she was regarded as having a disability, not that her employer regarded her as having a disability, even though its policies clearly demonstrate that her employer did regard her as having a disability, this is none the less, irrelevant and not a legal defense.

The plaintiff has certain rights exclusive of the defendant. The plaintiff has intangible private property rights; which include, medical privacy and a right to informed consent and rights protected under the ADA. Plaintiff upon giving notice to the defendant of her disability had claimed her protected rights under the ADA. No executive order or other policy ever constituted a waiver of plaintiff's rights. No policy or executive order ever conveyed upon the defendant any of the plaintiff's rights, or any new rights that diminished

#6

the plaintiff's rights in any way.

The defendant adopted policies affiliated with the name "COVID-19" and sought to impose them upon each employee, including the plaintiff, purportedly to prevent the spread of what it claims to be a deadly contagious disease. These policies were not adopted because of any legal duty or insurable risk, or under any legal authority, but solely to, as admitted by the defendant, prevent the spread of a deadly contagious disease known as "COVID-19". These policies were imposed upon every employee equally, except that the plaintiff informed the defendant she was an individual with a disability and regarded as having a disability as it pertained to this policy. The defendant ignored this and the fact that it had been given adequate notice that plaintiff was part of a protected class and thereby discriminated against the plaintiff based upon disability.

The defendant failed to comply with the Americans with Disability Law by conducting an individualized assessment to determine if the plaintiff was a direct threat and thereby, subject to its "COVID-19" policies or protocols. Instead, the defendant's policies demonstrate that the defendant regarded the plaintiff as having this deadly contagious disease, even though the defendant denies this, in spite of its policies demonstrating the opposite. It is not necessary for the defendant to have admitted this because the plaintiff was already protected under the ADA by its two criteria (the prongs known as "regarded as" and "record of").

The plaintiff satisfied the criteria for the two prongs of the ADA, that she was <u>regarded as</u> having a disability and that her employer, the defendant, <u>made a record of such disability</u> by mis-classifying her as having an impairment that required her to comply with the "COVID-19 policy". The policy was not job related, nor did the defendant given any conspicuous notice as to the manner in which such policy was directly related to the plaintiff's essential job function.

Eventually, the defendant involuntarily terminated the plaintiff's employment based on disability discrimination and in retaliation of the plaintiff attempting to exercise and enjoy her rights under the Americans with Disabilities Act, and in violation of the defendant's actual legal duty of care to aid and encourage those with disabilities as required by the Americans with Disabilities Act.

The defendant makes one single correct conclusion in its myriad of pages of

#6

erroneous conclusions, that Mount Sinai regarded Plaintiff as having a disability would require inferring that Mount Sinai regarded all of its employees as having a disability, and yes, thereby protected under the ADA, provided he or she asserted her rights under the ADA.  The defendant then immediately undoes this revelation by stating, that this is unreasonable inference.  Well, these are the facts, and just because the defendant's attorneys cannot wrap their minds around such a concept, does not mean that the plaintiff has not stated a cause of action.

Defendant continually refused to communicate with Plaintiff, refused to answer her questions and instead, dictated non-negotiable terms, "comply or you're fired".  This is the very definition of disability discrimination and retaliation, or more technically, adverse employment actions and was very clearly spelled out and alleged in the complaint.  The defendant just chooses to ignore these facts but that does not qualify as failing to state a cause of action.

The United States District Court itself has adopted these same policies and yet we are to expect the court to act impartially without disclosing any conflict of interest.  The plaintiff has to question how the court itself can be impartial when it also imposes these same illegal policies upon its own employees (judges, attorneys and court personnel) when ruling against the plaintiff is the same as ruling against itself.  The defendant and this court are receiving disaster relief funds and other benefits under the same premise that there is a "public health emergency", so how can the court be impartial in this matter?

The termination of plaintiff's employment was the result of discrimination based upon disability and retaliation, each in violation of Title I of the Americans with Disabilities Act.

Ignorance of the law is not a defense and for the defendant's violations.   The defendant has reason to know and should have known its own legal duties in this matter.  The defendant demonstrated not only ignorance of the law, but the willful and contumacious refusal to comply with the law and deliberate violation thereof.  This has caused plaintiff to unfairly and unnecessarily suffer severe financial hardship, discrimination based upon disability and retaliation in violation of the Americans with Disabilities Act and it continues to this day.  Her employment termination was not the result of her own actions, but the result of disability discrimination and therefore, the termination of her employment was in fact involuntary and not due to any fault of her own.

#6

First of all the plaintiff's vaccination status requires disclosure of medical records which violates Americans with Disabilities Act.  An employer is entitled only to the information necessary to determine whether the employee can perform the essential functions of the job[1] with or without reasonable accommodations.  Defendant cannot require the disclosure of the plaintiff's medical records especially when the plaintiff has notified the defendant that she was regarded as having a disability and the defendant simultaneously made a record of such disability by mis-classified the plaintiff as having an impairment.  Here the defendant admits violating the ADA and retaliating against the plaintiff by requiring disclosure of so-called "vaccination status", which is the same as disclosure of medical records.  The policy was not applied generally, it was applied against the plaintiff in a discriminatory manner beginning from the date that the plaintiff gave notice that she was regarded as having a disability.  She was then identified as part of a protected class involved in a protected activity.  This was ignored and denied by the defendant in violation of the ADA.

## ARGUMENT AND MEMORANDUM OF LAW

In the myriad of irrelevant legal citations made by the defendant, in which it appears the defendant simply trolled every court record in the country for any case that mentioned disability law, and cited it with erroneous commentary and incorrect legal conclusions, nearly none of these had anything to do with the facts in Johnson's case against Mount Sinai.  It is very interesting that while the defendant cited everything, most of which were trial court decisions, it failed to cite the one case that caused the airlines to stop imposing mask-wearing on their passengers.  And it is expected that the court and the defendant will claim that this is not an employment case, but the point of the case is that a federal judge, sitting in an appellate tribunal, ruled that the CDC did not have the authority to impose "mask-wearing guidelines" upon anyone, and therefore, the airlines (or anyone else for that matter) could never have been delegated such authority.  Judge Mizzle explains this in her 59 page conclusions the facts and law.  See the court's order April 18th 2022 in <u>Health Freedom Defense Fund, Inc v Biden</u> (MD, FL 2022).  This is the same argument made by the plaintiff in nearly every written communication, even if there were a real pandemic, or even if someday, someone produced evidence that "Covid-19" is an actual deadly contagious disease, it would still never create any new legal duty or authority for anyone to impose any

---

1  29 CFR 1630.2(n)(2) definition "Essential Function": "(i) ....the reason the position exists is to perform that function."

so-called "guidelines" upon anyone, including the defendant in this case.   There is no authority for a health control order other than one obtained by the Department of Health, against a certain individual, based upon a physician's affidavit and judicial oversight and approval following an evidentiary hearing.   Website commentary and "mandates" and "guidelines" or company policies that are not job related never create any new legal authority, or amend or repeal existing law.

Plaintiff's complaint sufficiently adheres to the general standards of pleading as laid down by Bell Atlantic Corp. v. Twombly (550 U.S. at 555).  Foremost, the amended complaint clearly "stat(es) a claim upon which relief may be granted" which is neither "formulaic" or "speculative". Second, the allegations contained in the amended complaint, "however in-artfully pleaded, are sufficient to call for the opportunity to offer supporting evidence". Finally, the complaint includes "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's cause of action is and the grounds upon which relief may be granted.

Regarding the defendant's citation of Ashcroft v. Iqbal, it is misplaced for the reason that this is a case of first impression for the reason that ADA cases typically involve plaintiffs who have assumed the burden of proof under the "actual" or "diagnosed" prong of the ADA; whereas, the plaintiff is proceeding under the "regarded as" and the "record of" prongs of the ADA where the burden of proof is upon the defendant to prove that it qualified for an exemption or exception to its legal duties to comply with the ADA.   The complaint provides more than sheer possibility that the defendant has violated the ADA.

This is also a case of first impression because, regarding the defendant's "Covid" policy, the plaintiff has exercised her rights to medical privacy and informed consent to refuse medical treatments.   These rights are not limited merely to the "doctor-patient" relationship, but are squarely rooted in the ADA under 29 CFR Parts 1630.9(d), 1630.12(b), 1630.13(b) and Parts 1630(c) and (d) for the reason that these rights are intangible private property rights of people, and of the plaintiff specifically, and are protected by law and not originated or granted by any statute.   These rights existed long before any laws were adopted by modern society and in fact, have been exercised in the formation of modern society.

This is also a case of first impression because the plaintiff, for the first time before others using the ADA to protect their rights, asks the question:  How did the defendant suddenly acquire any new legal authority or legal duty to treat the plaintiff for a disease without any medical examination or diagnosis?  The answer of course is that the defendant never did acquire any such legal duty or

#6

authority.

This is also a case of first impression because, while the defendant makes the noble-sounding but disingenuous claim that its "Covid" policy "is intended to prevent the spread of Covid", it has absolutely no financial responsibility to engage in or administer such a policy.

The defendant continuously cites Shklyar v. Carboline Co., and bases its denial of the Johnsons's allegation that Mount Sinai regarded her as having a disability to be conclusory and implausible and completely disregards that the citing is not a holding, is not pertinent and this court cannot rely upon.

Plaintiff has clearly alleged in her complaint the required retaliation elements for a *prima facie* case; (1) Protected activities have been alleged. Preforming essential job actions, walking, working, talking, breathing, please see plaintiff's complaint paragraphs 16, 17, 23, 58. This was sufficiently alleged in the complaint. The defendant simply chooses to ignore it. (2) for adverse actions see plaintiff's complaint paragraphs 15, 21, 37-39, 40, 50-54, 75-78, 80, 87, 88; (3) for casual link please see plaintiff's complaint paragraphs 23, 35, 38, 39, 48, 50, 53, 54, 74, 75, 77, 78, and 80.

These paragraphs very clearly demonstrate how the plaintiff alleged she suffered adverse employment actions, and that these actions were undertaken by her employer. Plaintiff was qualified for the protection of the ADA because she notified her employer that she is a qualified individual with a disability and being regarded as disabled and her employer is making a record of her disability. The "statutory protected activity" was sufficiently alleged in the complaint where the plaintiff alleged that she was engaged in one or more major life activities. These activities are obviously protected by the ADA. The facts supporting these allegations have been alleged in the complaint and establish the causal link between the protected activity and the defendant's actions.

The defendant's comment on page 6, last paragraph, just because the defendant doesn't recognize these set of facts as constituting retaliation and the casual link doesn't mean that the complaint fails to state a cause of action, it just shows the defendant's ignorance of disability law.

On page 7, last paragraph, the defendant's citation of Beckerich is also impertinent because, as the court stated "Plaintiffs' claims, mostly rooted in the Constitution, had little

#6

chance of success on the merits due to a lack of state action present in the case. And the court also found that the aspect of the complaint pertaining to ADA violations was easily defeated by the fact that the defendant's offered the so-called accommodations of a "religious or medical exemption".  This is not the limit of disability law, and the case was not properly articulated.  This is the problem we have now, attorneys are not trained in the ADA and judges lack the training to have anything beyond a layman's understanding of the ADA.  This offer of "exemptions" is already addressed in this reply and again, not relevant to plaintiff's complaint against the defendant.

Regarding defendant's citation of Earl v. Good Samaritan Hosp. of Suffern, this case is not relevant because the parties involved in the case were participating in the "Covid" policies and waiving their rights to medical privacy and informed consent by taking the "Covid" tests, getting "fit-tested" for a respirator and all those things related to the "pandemic". The plaintiff in the Earl case was asking for accommodations.  Johnson was not asking for accommodations and again, the defendant's "Covid" policy was not essentially related to his essential job function.

As stated in the case, to plead a *prima facie* violation under the ADA, a Plaintiff must allege "(1) that [she] is a 'qualified individual' with a disability; (2) that the defendants are subject to one of the Acts; and (3) that [she] was 'denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, by reason of [her] disabilit[y].'" Powell v. Nat'l Bd. of Med. Examiners, 364 F.3d 79, 85 (2d Cir. 2004), opinion corrected, 511 F.3d 238 (2d Cir. 2004) (quoting Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003)).  This is precisely what Johnson has alleged throughout her complaint against Mount Sinai for discrimination and retaliation in violation of the ADA.  Johnson does not rely upon the defendant admitting that it regarded her as having a disability, even though it's "Covid" policy clearly demonstrates that it does, but that she was already regarded as having a disability no matter what Mount Sinai admitted or denied. The Earl case does not apply here.

The definition of disability appears in Titles II and III of the Americans with Disabilities Act and is very clearly defined for matters concerning employment and the administration of Title I of the ADA in Bragdon v. Abbott, 524 U.S. 624 (1998) and as (1) a physical or mental impairment that substantially limits one or more major life activities of an individual; (2) a record of such an impairment; or (3) being regarded as having such an

#6

impairment. 42 U.S.C. 12202(2).   The definition expressly includes having a contagious disease, or being regarded as having a contagious disease as being a disability.

Defendant demonstrated an utter failure to understand or know the most basic principles of disability law.  The burden of proof was not upon the plaintiff to prove she had a disability that prevented her from complying with the policy, once the defendant was advised, the burden was upon the defendant to establish one or more exceptions or exemptions to its legal duty to comply with the ADA.  Its failure to do so precluded the Plaintiff from any obligation to accept any of the defendant's "COVID policies".[2]  These policies included the disclosure of plaintiff's medical history or information (e.g. "vaccine status"), disclosure and collection of vital statistics (e.g. body temperature), medical examinations, medical interventions such as mask-wearing or vaccines, and isolation, segregation or quarantine (e.g. "social distancing").  Each of these were based upon the false presumption that the plaintiff had a contagious disease (disability) but without any evidence, and these were imposed upon her in violation of disability law and the state's public health policy.

The plaintiff is not required to discuss the nature of a disability she is regarded as having because she was not requesting reasonable modifications to the accommodations offered by the defendant and the policy was not related in any way to the plaintiff's essential job function.   Furthermore, the Plaintiff was never required to request any so-called "exemption" from defendant's policies for the same reasons explained herein.  Defendant was under no legal duty to impose it's "COVID" policies, had no authority for imposing them, violated the ADA by imposing them upon the Plaintiff as a condition for employment, and then penalizing her for exercising her right to refuse.

Regarding to defendant's offer to apply for a "medical exemption" or a "religious exemption", these futile gestures were offered in bad faith and failed to disclose qualifying criteria for the exemptions and were not legally defensible in a court of law, and there was no legal duty from which to become exempt in the first place.

Title I of the Americans with Disabilities Act prohibits the defendant from requiring medical examinations or making disability-related inquiries of the plaintiff unless such examination or inquiry is shown to be job-related and consistent with business necessity.[3]

29 CFR Part §1630.13(b) prohibits medical examinations and inquiries, to wit:

---

2       29 CFR Part 1630.9(d)
3       42 U.S.C. §12112(d)(4); 29 CFR §1630.13 (b); 29 CFR §1630.14(c)

"(b) Examination or inquiry of Employees. Except as permitted by § 1630.14, it is unlawful for a covered entity to require a medical examination of an employee or to make inquiries as to whether an employee is an individual with a disability or as to the nature or severity of such disability.

29 CFR Part §1630.14(c)

(c) Examination of Employees. A covered entity may require a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity. A covered entity may make inquiries into the ability of an employee to perform job-related functions."

Furthermore, the interventions sought to be imposed upon the plaintiff were not part of any voluntary health program, that is the only other exception.

The defendant has ignored the two prongs of the Americans with Disabilities Act, "regarded as" and "record of". The plaintiff notified defendant many times by stating that she was regarded as having a disability and that she was a qualified individual with a disability, but the defendant continued to intimidate, harass, coerce, penalize and retaliate against the plaintiff and this is more than adequately alleged in the complaint. The fact that the defendant chooses to ignore these statements does not constitute not having made them.

Let's consider reality for a moment and apply some logic. If there was an actual vaccine for whatever the defendant's "Covid" policy is intended to protect employees from suffering, then why don't those who want the protection simply take the vaccine? Why do we need to force it upon everyone? What is the need for such a policy in the first place? When, on what date, did Johnson's employer acquire her private, intangible property right to medical privacy and informed consent? If plaintiff's employer did in fact acquire her private intangible property rights, did this acquisition also divest Johnson of that right she possessed before her employer adopted such a policy? What other property rights could employers then take from their employees by the same standard? How about the right to decide what food to eat or how many children to bring into the world? What about the defendant adopting a policy of having no fat employees? Who gets to decide the criteria for being fat? What if being fat is not job related? Where does this ridiculous and abbsurd policy-making end? How can professionals in the practice of law even think that any of these ludicrous claims made by the defendant have any iota of legitimacy or even logic? Why are you trying to defend something so evil and immoral, and without even having a legitimate defense? The problem we are facing in this situation is that the defendant's attorneys cannot simply advise their client that

#6

its policy is illegal and then correct the policy, that is likely to end in professional exclusion to say the least, for the court itself has adopted the same illegal policies as the defendant. This is what the court is going to do, whether or not it's legally correct, the court is ultimately going to grant the motion to dismiss and place the burden of appealing on the plaintiff. This will allow the judge to continue being accepted in his professional association without scrutiny or ridicule, and it will permit the court to maintain the *status quo*, the least of which includes receiving disaster relief funds for the "pandemic".

The other citations which are not mentioned herein are not holdings, are impertinent and are commentary from other trial court opinions. The holdings are not on point because they are based on different set of facts. Where this case of Johnson v. Mount Sinai is a case of first impression and has completely different set of facts.

WHEREFORE the plaintiff requests the court to deny the defendant's motion to dismiss and ask the defendant to answer the complaint and grant a leave to amend the complaint.

*Jennifer Johnson*
Jennifer Johnson,
Plaintiff in Propria Persona

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                            :
**JENNIFER JOHNSON,**                                       :
                                   Plaintiff,               :
                                                            :   **MEMORANDUM DECISION AND**
            – against –                                     :   **ORDER**
                                                            :   22-CV-2936 (AMD) (JRC)
**MOUNT SINAI HOSPITAL GROUP, INC.**                        :
                                                            :
                                   Defendant.               :
------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

The *pro se* plaintiff alleges the defendant, her former employer, discriminated and

retaliated against her on the basis of a perceived disability.  Before the Court is the defendant's

motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No.

14), and the plaintiff's motion to amend her complaint (ECF No. 18).  For the reasons that

follow, the defendant's motion is granted, and the motion to amend is denied as futile.

## BACKGROUND

The plaintiff was a registered nurse in the defendant's emergency department from

November 20, 2006 to September 27, 2021.  (ECF No. 18 ¶ 15.)  In March 2020, the defendant

implemented measures to mitigate the spread of COVID-19; the defendant limited occupancy of

the break room to three fully masked employees at a time, required employees to wear N-95

masks during their shifts, and to wear face shields when working with suspected COVID

patients.  (*Id.* ¶¶ 16-23; Johnson Aff. ¶¶ 11-23.)[1]

The defendant updated its policies and procedures in June 2021, and required that all

employees be tested for COVID before they could begin work.  (ECF No. 18 ¶ 27; ECF No. 18-1

---

[1] Jennifer Johnson's affidavit is attached to her complaint.  (ECF No. 18-1 (the "Johnson Aff.").)

at 10.) On June 5, 2021, the plaintiff refused to take a COVID-19 test before her shift and was sent home. (Johnson Aff. ¶ 14.) The plaintiff's June 12, 2021 and June 19, 2021 shifts were also canceled. (*Id.* ¶ 17.) The defendant sent the plaintiff the following "Warning Notice" on June 24, 2021: "Mount Sinai Queens enacted several steps to investigate, manage, and prevent further spread [of COVID-19]. One method of prevention included having everyone who was face-forwarding patients, be tested for COVID-19 . . . You refused to be tested on June 5, 2021, and therefore [were] sent home, as Mount Sinai Queens could not confirm whether you would test positive for COVID-19. This posed an increased risk of spreading COVID-19 to patients and other staff." (ECF No. 18-1 at 10.) The notice was a "final warning." (*Id.*) On July 31, 2021, Mount Sinai informed the plaintiff that beginning on September 1, 2022, employees would have to be vaccinated or tested weekly, and that employees who refused would be terminated. (ECF No. 18 ¶ 37; Johnson Aff. ¶ 20.) The defendant gave the plaintiff until September 13, 2021 to get vaccinated, but the plaintiff refused. (Johnson Aff. ¶ 21; *see generally* ECF No. 18.) On September 20, 2021, the defendant placed the plaintiff on unpaid leave, and terminated her on September 27, 2021. (Johnson Aff. ¶ 21; *see also* ECF No. 18-1 at 35.)

The plaintiff filed this lawsuit on May 16, 2022, claiming discrimination and retaliation in violation of Americans with Disabilities Act of 1990 ("ADA") and the ADA Amendments Act of 2008 ("ADAAA"). She alleges that she was "regarded . . . as disabled with a contagious disease" and regarded "as impaired in [her] immune system and impaired in [her] respiratory system," regarded as "having COVID-19 or being prone to getting infected . . . because she is not vaccinated," as well as "perceived" as having a contagious disease. (ECF No. 18 ¶ 60; Johnson Aff. ¶¶ 2, 11, 25.) The plaintiff alleges that the defendant's COVID-19 policies did not include any provisions for employees with disabilities, and that she was treated differently than

vaccinated employees and unvaccinated employees with medical or religious exemptions. (ECF

No. 18 ¶¶ 72, 75.) The plaintiff claims that the defendant subjected her to adverse employment

actions including "segregating and isolating [her from other] employees; compelling her to

submit to various medical interventions such as wearing masks over her face and getting 'PCR'

tests; requiring her to get vaccinated as a new condition of employment, and threatening her with

terminating her employment, and ultimately firing her." (*Id.* ¶ 86.) In addition, the plaintiff

claims that the defendant retaliated against her because of her good faith refusal to comply with

its COVID-19 procedures through "impos[ed] punitive measures and adverse employment

actions." (*Id.* ¶¶ 85, 131-39.)

The plaintiff seems to claim both that she is actually disabled (*see, e.g.*, ECF No. 17 at 10

("Plaintiff was qualified for the protection of the ADA because she notified her employer that

she is a qualified individual with a disability and being regarded as disabled by her employer is

making a record of her disability")), and that the defendant improperly characterized her as

having a disability (*see id.* at 6 ("The plaintiff satisfied the criteria for the two prongs of the

ADA, that she was regarded as having a disability and that her employer, the defendant, made a

record of such disability by mis-classifying her as having an impairment that required her to

comply with the COVID-19 policy.")). In any event, the plaintiff alleges that the defendant

retaliated against her for her good faith refusal to comply with its COVID-19 policies. (ECF No.

18 ¶¶ 85, 102, 131, 134.)

On August 19, 2022, the defendant moved to dismiss the complaint. (ECF No. 14.) On

September 14, 2022, the plaintiff filed her opposition to the motion to dismiss (ECF No. 17), and

a separate motion to amend (ECF No. 18). The defendant filed its reply on October 3, 2022.

(ECF No. 20.)

#7

## LEGAL STANDARD

To avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although "detailed factual allegations" are not required, a complaint that includes only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks, alterations and citations omitted).

Because the plaintiff is proceeding *pro se*, I construe her complaint liberally, and evaluate it by "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). The plaintiff's claims must be "read to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (internal quotation marks and citations omitted).

## DISCUSSION

### I.      Motion to Amend

The plaintiff moved to amend her complaint after the defendant filed its motion to dismiss the original complaint. The proposed amended complaint does not add new parties or claims. The defendant opposed the motion to amend in its reply to the plaintiff's opposition to

Case 1:22-cv-02936-AMD-JRC   Document 21   Filed 02/22/23   Page 5 of 16 PageID #: 300
Case 23-466, Document 35, 07/18/2023, 3544400, Page68 of 79

#7

the motion to dismiss; the defendant maintains that the proposed amended complaint is not materially different from the original complaint.

"A district court has broad discretion in determining whether to grant leave to amend[.]" *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). "One appropriate basis for denying leave to amend is that the proposed amendment is futile," and a proposed amendment "is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

When a plaintiff seeks to amend a complaint while a motion to dismiss is pending, a court "may either deny [the] pending motion to dismiss as moot or consider the merits of the motion, analyzing the facts as alleged in the amended pleading." *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020). This approach "promotes judicial economy by obviating the need for multiple rounds of briefing addressing complaints that are legally insufficient." *Id.*

If the proposed amended complaint "does not seek to add new claims or parties," and the opposition has had "a sufficient opportunity to respond to the new pleading, then, for purposes of procedural efficiency, the merits of the pending motion to dismiss ought to be considered in light of the proposed amended complaint." *Kilpakis v. JPMorgan Chase Fin. Co., LLC*, 229 F. Supp. 3d 133, 139 (E.D.N.Y. 2017) (collecting cases); *see also Van Wade v. St. Paul Blvd. Fire Dist.*, No. 21-CV-6218, 2022 WL 486911, at *3 (W.D.N.Y. Feb. 17, 2022) (finding it made "particular

Case 1:22-cv-02936-AMD-JRC   Document 21   Filed 02/22/23   Page 6 of 16 PageID #: 301
Case 23-466, Document 35, 07/18/2023, 3544400, Page69 of 79

#7

sense" to evaluate the defendants' motion to dismiss as applied to the plaintiff's proposed
amended complaint where the allegations in the proposed amended complaint did not materially
differ from the original complaint); *Rubio v. BSDB Mgmt. Inc.*, No. 19-CV-11880, 2021 WL
102651, at *6 (S.D.N.Y. Jan. 12, 2021) (applying the merits of the pending motion to dismiss to
the proposed amended counterclaims where those counterclaims did not add new parties or
claims and the opposing party had a sufficient opportunity to respond).

Accordingly, the Court construes the defendant's motion to dismiss "as if it were directed
at the [proposed amended complaint]." *Kilpakis*, 229 F. Supp. 3d at 139-40. If the proposed
amended complaint cannot survive Rule 12(b) scrutiny, the motion to amend will be denied as
futile. *See id.*

## II.    Discrimination

The ADA prohibits an employer from discriminating against a qualified employee on the
basis of disability. 42 U.S.C. § 12112(a). A plaintiff claiming disability discrimination under
the ADA must allege that: "(1) the employer is subject to the ADA; (2) the plaintiff is disabled
within the meaning of the ADA or perceived to be so by [her] employer; (3) [she] was otherwise
qualified to perform the essential functions of the job with or without reasonable
accommodation; (4) [she] suffered an adverse employment action; and (5) the adverse action was
imposed because of [her] disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir.
2015); *Williams v. N.Y.C. Dep't of Educ.*, No. 18-CV-11621, 2020 WL 906386, at *3 (S.D.N.Y.
Feb. 25, 2020).

Under the ADA, a "disability" is: "(A) a physical or mental impairment that substantially
limits one or more major life activities of such individual; (B) a record of such an impairment; or
(C) being regarded as having such an impairment." 42 U.S.C. § 12102(1); *see also Williams v.*

*Geiger*, No. 18-CV-01398, 2020 WL 1304397, at *6 (S.D.N.Y. Mar. 19, 2020). Major life

activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping,

walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating,

thinking, communicating, and working." § 12102(2)(A). A plaintiff is "regarded as" having a

disability if she "establishes that [she] . . . has been subjected to an action prohibited [by the

ADA] because of an actual or perceived physical or mental impairment whether or not the

impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). A

plaintiff has a "record" of a disability if she "has a history of, or has been misclassified as

having, a mental or physical impairment that substantially limits one or more major life

activities." 29 C.F.R. § 1630.2(k)(1).

The defendant argues that the plaintiff has not established a record of disability, or that

Mount Sinai regarded the plaintiff as having a disability. (ECF No. 16.)

### a. Record of Impairment

The plaintiff alleges that Mount Sinai made a record of her having a disability "by mis-

classifying the plaintiff as having an impairment that substantially limited one or more life

activities including but not limited to thinking, working, eating, breathing, walking,

communicating and others expressed in the ADA," and that the defendant "made such a record

by adding the plaintiff's name to a list of employees who were 'unvaccinated' and then keeping

an actual record of the same." (ECF No. 18 ¶¶ 146-47.) The defendant did not, as the plaintiff

claims, record her as having an "impairment" that limited one of her "major life activities."

Rather, following New York state law, the hospital required the plaintiff and all employees to get

vaccinated against COVID-19, unless they received an exemption. (ECF No. 18-1 at 35-39;

ECF No. 16 at 1, 8.)

The plaintiff acknowledges that the vaccination policy applied to all employees, and that it was implemented to prevent the spread of COVID.  (ECF No. 17 at 6 ("The defendant adopted policies affiliated with the name 'COVID-19' and sought to impose them upon each employee, including the plaintiff, purportedly to prevent the spread of what it claims to be a deadly contagious disease.  These policies were not adopted because of any legal duty . . . but solely to . . . prevent the spread of . . . COVID-19.  These policies were imposed on every employee equally , . . . " ).)  According to the plaintiff, however, the policy is evidence that the defendant misclassified all employees as having an impairment.  (ECF No. 17 at 1 ("It is not rational to act as if everyone has a disability at the same time, and then impose medical interventions . . . ."); *id.* at 4 (The defendant "misclassifi[ed] each staff member and each parent [sic] as having an impairment that can only be cured by participating in the vaccination programs described in the regulations."); *see also* ECF No. 18 ¶ 58 ("[F]or clarity's sake [I] allege that the defendant's policy rested on the assumption that every employee, the plaintiff included, had or could have [COVID].").)

Other courts have rejected this argument, with good reason.  A hospital does not "misclassify" employees—who are charged with taking care of vulnerable people—merely by requiring them to be vaccinated against a potentially deadly disease.  Like the plaintiff in *Speaks v. Health Sys. Mgmt., Inc.*, No. 22-CV-77, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022), the plaintiff here "was simply required to become vaccinated under the Company's COVID-19 policy applicable to all employees, which . . . plainly did not impair her ability to work (for example, for another company)."  In rejecting an identical argument, the court in *Speaks* concluded that "inferring that the Company classified [the plaintiff] as impaired by requiring her to become vaccinated or seek an exemption would mean that [the defendant] considered all its

Case 1:22-cv-02936-AMD-JRC   Document 21   Filed 02/22/23   Page 9 of 16 PageID #: 304
Case 23-466, Document 35, 07/18/2023, 3544400, Page72 of 79

#7

employees to have an 'impairment,' which is of course not a plausible inference, particularly in light of the possibility of an exemption." *Id.*; *see also Shklyar v. Carboline Co.*, No. 22-CV-391, 2022 WL 2867073, at *4 (E.D. Mo. July 21, 2022) ("[Plaintiff's] amended complaint shows that [her employer] classified [her] in the same way that it classified all of its RD&I employees. Inferring that [the employer] misclassified [plaintiff] as having a disability would therefore require inferring that [the employer] misclassified all of its RD&I employees as having a disability. Such an inference is not reasonable.").

As noted above, it is not clear whether the plaintiff is arguing that she actually had a disability, but in light of her *pro se* status, the Court reads the complaint liberally and construes the complaint as alleging that she had a "history of impairment." 29 C.F.R. § 1630.2(k). The plaintiff appears to allege more than one impairment, although she does not say what they actually are. Instead, she claims to have "conditions that contraindicate wearing a mask or limiting my oxygen or re-breathing my expelled bacteria."[2] (Johnson Aff. ¶ 9.) The plaintiff does not cite a medical diagnosis for her unnamed conditions or claim that there are medical records documenting the conditions.[3]

Even if the plaintiff had alleged a real impairment, she does not plausibly allege that she was substantially limited in any major life activity. 29 C.F.R. § 1630.2(j)(ii) (an impairment must "substantially limit[] the ability of an individual to perform a major life activity as compared to most people in the general population"). The plaintiff lists major life activities—

---

[2] The plaintiff appears to have lifted this language, as well as other parts of her affirmation, from the complaint filed in *Shklyar*. 2022 WL 2867073 (E.D. Mo. April 4, 2022).

[3] It is not clear whether the plaintiff is claiming that she notified the defendant of these conditions. In her response to the defendant's motion, she maintains that she "informed the defendant she was an individual with a disability and regarded as having a disability as it pertained to this policy." (ECF No. 17 at 6.) In the proposed amended complaint, however, the plaintiff alleges that she "refused to disclose her medical records." (ECF No. 18 ¶ 93.)

#7

"thinking, working, eating, breathing, walking, communicating and others expressed in the

ADA" (ECF No. 18 ¶ 146), but does not allege how her conditions—as yet unnamed—limited

those activities.  She objects to wearing masks and other protective gear; she says that "[w]earing

N-95 masks at all times is cumbersome, they are uncomfortable and hot to wear.  They make it

difficult to breathe and I have often felt dizzy while wearing them.  I experience difficulty

concentrating and I have increased forgetfulness since wearing N-95 masks.  The masks also

make it difficult to communicate . . . When working directly with suspected COVID patients, I

also have had to wear plastic eye shields and a face shield over the mask.  The eye shields often

become foggy and this makes it difficult for me to see.  I have experienced anxiety, feelings of

panic and claustrophobia while wearing full protective gear." (Johnson Aff. ¶¶ 11-12.)  The

plaintiff also alleges that the defendant's policy limiting the number of people in the break room

makes her feel "isolated and segregated from [her] co-workers." (*Id.* ¶ 12.)

  Even drawing all inferences in the plaintiff's favor, these claims are insufficient.  *See*

*Fitzgerald v. We Company*, No. 20-CV-5260, 2022 WL 952963, at *8 (S.D.N.Y. Mar. 30, 2022)

("[The plaintiff] makes no showing that [her] affliction is any worse than is suffered by a large

portion of the nation's adult population . . . . Similarly, [her] statement that she is disabled in . . .

cognitive functions, supported by nothing more than her own affidavit, is too vague, conclusory,

and self-serving to create a triable issue of fact as to whether her anxiety causes substantial

limitations in any major life activities." (internal quotation marks and citation omitted)); *cf.*

*Konieczny v. New York State Div. of Parole*, 647 F. Supp. 2d 256, 261 (W.D.N.Y. 2009) ("An

impairment cannot be demonstrated by bare evidence of a medical diagnosis: rather, the ADA

requires those claiming the Act's protection . . . to prove a disability by offering evidence that the

extent of the limitation [caused by their impairment] in terms of their own experience . . . is
substantial." (internal quotation marks and citation omitted)).

Moreover, the plaintiff's claims are significantly undermined by her apparent willingness
to return to work if the defendant met the conditions she outlined in an email, including that the
defendant would "confirm[] that she will suffer no harm," from the vaccination, and that "a fully
qualified doctor" would take "full legal and financial responsibility for any injuries occurring to
[her].'"[4]  (ECF No. 18-1 at 27-28.)  The plaintiff concluded by declaring, "[o]nce I have received
the above information and I am satisfied that there is no threat to my health[,] I will be happy to
either accept the vaccine and/or be tested as indicated."  (*Id.*)

The allegations in the plaintiff's complaint are not sufficient to sustain an ADA claim.
*See Cain v. Mandl Coll. of Allied Health*, No. 14-CV-1729, 2017 WL 2709743, at *4 (S.D.N.Y.
June 22, 2017) ("Plaintiff's allegations merely track the language of the statute noting that her
PTSD substantially limits one or more of Plaintiff's major life activities such as eating, sleeping,
working, attending school or even participating in the basic functions of life, such as eating and
sleep, employment, and education.  Vague, conclusory assertions without details on how her
condition actually affects a major life activity are insufficient." (internal quotation marks and
citation omitted)); *Ejaz Baluch v. 300 West 22 Realty, LLC et al.*, No. 21-CV-9747, 2023 WL
112547, at *5 (S.D.N.Y. Jan. 5, 2023) ("Allegations that merely track the language of the statute
or [v]ague, conclusory assertions without details on how [a plaintiff's] condition actually affects
a major life activity are insufficient to survive a motion to dismiss." (internal quotation marks
and citation omitted)).

---

[4] The plaintiff further requested that the defendant confirm that her refusal would not "compromise [her]
position" and that she would not "endure any more pressure to follow these mandates/guidelines," if she
should have to decline what she characterized as "the offer of vaccination and/or wearing of a mask"
and "testing because the health risks outweighed the benefits."  (ECF No. 18-1 at 28.)

**b. Regarded as Having an Impairment**

Nor has the plaintiff plausibly alleged that Mount Sinai regarded her as having an

impairment, because it is premised on her theory that the defendant viewed every employee as

disabled. Thus, the plaintiff alleges that she is "regarded as" having a disability by "the

defendant's 'COVID-19 Policy,' [which] regarded [her] as having COVID-19 or being prone to

getting infected with COVID-19 because she is not vaccinated" (ECF No. 18 ¶¶ 57, 60), and that

she was regarded as having "an impaired immune system and an impaired respiratory system."

(Johnson Aff. ¶ 2; *see also* ECF No. 17 at 6 ("[T]he defendant's policies demonstrate that the

defendant regarded the plaintiff as having this deadly contagious disease . . . .").) The plaintiff

also alleges that the defendant classified her as "unvaccinated" (ECF No. 18 ¶ 118), and viewed

her as having COVID-19, with an impaired immune system and respiratory system, because it

required her to comply with its COVID-19 policies. As explained above, the plaintiff's claim is

not reasonable. The defendant's COVID-19 policies were applicable to all of its employees,

except those with a legitimate exemption, as required by law.

To the extent that the plaintiff means to argue that the defendant regarded her as disabled

because it regarded her as having COVID-19, that claim also fails. Under the ADA, individuals

are not "disabled" when they have conditions that are "transitory and minor," or conditions with

an actual or expected duration of six months or less. 42 U.S.C. § 12102(3)(B); *see also* Margaret

C. Jasper, Legal Almanac: The Americans With Disabilities Act § 2.5 (2012) ("[A]n individual

with epilepsy, paralysis, HIV infection, AIDS, a substantial hearing or visual impairment, mental

retardation, or a specific learning disability is covered, but an individual with a minor, non-

chronic condition of short duration, such as a sprain, broken limb, or the flu, generally would not

be covered . . . . This employee is not protected by the ADA because, although he is 'impaired,'

the impairment does not substantially limit a major life activity because it is of limited duration and will have no long-term effect."); *see also Lundstrom v. Contra Costa Health Services*, No. 22-CV-6227, 2022 WL 17330842 at *5 (N.D. Cal. Nov. 29, 2022) ("Federal courts generally agree that a COVID-19 infection is not a disability." (collecting cases)).

Nor is the plaintiff's vaccination status a disability. The plaintiff cites no authority to support that position, nor is the Court aware of any. The decision to vaccinate or not to vaccinate is a personal choice, while a disability under the ADA is not something a person chooses. *Speaks*, 2022 WL 3448649, at *5 ("Refusing to get a vaccine required by an employer is not itself an 'impairment' of any sort. Rather, it reflects a personal choice by [the plaintiff] that, while hers to make in this context, cannot be considered an impairment under the ADA."); *cf. Berquist v. Lynch*, 14-CV-295, 2015 WL 4876344, at *5 (E.D. Wash. Aug. 14, 2015) ("An individual suffers a disability when a physical or mental impairment substantially limits one or more major life activities. Neither party gets to choose when a disability begins." (citing *Bragdon v. Abbott*, 524 U.S. 624, 641 (1998))). As the plaintiff appears to acknowledge, the defendant saw her refusal to be vaccinated as a threat to the health and safety of other employees and of patients. (*See* ECF No. 18-1 at 35 ("those who receive exemptions will have to undergo weekly PCR testing to help keep our patients and our Mount Sinai family safe"); *id.* at 10 ("In the end of May 2021, through early June 2021, there was a serious outbreak of COVID-19 at Mount Sinai Queens. Given the significant concerns of infecting our vulnerable patient population and staff, Mount Sinai Queens enacted several steps to investigate, manage, and prevent further spread."); Johnson Aff. ¶ 14 (the plaintiff had to take a COVID test "due to a COVID outbreak in the hospital").)

The plaintiff did not plausibly allege that the defendant misclassified her as having a disability or regarded her as disabled.  Accordingly, her discrimination claim is dismissed.

#7

## III.    Retaliation

"To state a claim for ADA retaliation, 'a plaintiff must allege that: (1) [she] engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity.'" *Robles v. Medisys Health Network, Inc.*, No. 19-CV-6651, 2020 WL 3403191, at *11 (E.D.N.Y. June 19, 2020) (alterations omitted) (quoting *Caskey v. County of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014) (summary order)).  The plaintiff alleges that "upon giving defendant notice that she was regarded as having a disability and that she was a qualified individual with a disability, the defendant began retaliating against [her]."  (ECF No. 18 ¶ 131.)  She further alleges that the defendant retaliated against her for "exercising her rights under the ADA to refuse in good faith the defendant's 'COVID-19 Policy' measures" (*id.* ¶ 143) by "impos[ing] pecuniary measures [and] adverse employment actions . . . which included isolation, segregation, cancellation of shifts and therefore loss of income, uncomfortable working conditions, threats of termination, and ultimately, the termination of her employment" (*id.* ¶ 138).

The defendant, on the other hand, maintains that (1) the plaintiff does not allege that she was engaged in a protected activity; (2) the defendant's policy decisions were not directed at her, and thus could not have been retaliatory; (3) the plaintiff did not complain about the COVID-19 policies until June 2021, almost a year after they were adopted in July 2020; and (4) her termination in 2021 was too far removed from her complaints, which she made more than three months earlier in June 2021.  (ECF No. 16 at 6-7.)

14

Case 1:22-cv-02936-AMD-JRC   Document 21   Filed 02/22/23   Page 15 of 16 PageID #: 310
Case 23-466, Document 35, 07/18/2023, 3544400, Page78 of 79

#7

Even assuming that the plaintiff could demonstrate that her opposition to the defendant's COVID-19 policies was "protected activity," she cannot show a causal connection between her opposition and her termination. While the plaintiff's refusal to comply with the defendant's COVID-19 policies was clearly the basis for her termination, the defendant adopted its policies before the plaintiff objected to vaccinations and masking.

The defendants implemented policies and procedures to mitigate the spread of COVID-19 in March 2020. (ECF No. 18 ¶ 16.) In June 2021, the defendant updated its policies and procedures to require all employees to be tested for COVID before they could begin work. (ECF No. 18 ¶ 27; ECF No. 18-1 at 10.) It was then that the plaintiff objected to the defendant's COVID-19 testing policies. (Johnson Aff. ¶¶ 14-18.) In July 2021, the defendant announced that starting on September 1, 2022, employees would have to get vaccinated or submit to weekly COVID testing, and that refusing to comply would lead to termination. (*Id.* ¶ 20.) It was not until the end of August that the plaintiff complained that she was being regarded as disabled. (Johnson Aff. ¶ 25; ECF No. 18-1 at 30-31.) Accordingly, she has not sufficiently alleged a causal connection between the so-called "protected activity" and the adverse action. *See Shklyar*, 2022 WL 2867073, at *6 ("Given that the adverse action taken against Shklyar was taken pursuant to policies that were implemented before Shklyar engaged in her alleged protected activity, it is not reasonable to infer that there was a causal connection between the two events."); *Speaks*, 2022 WL 3448649, at *6 ("[I]t is clear that the policy – which was undisputedly the grounds for Speaks' termination when she chose to remain unvaccinated – was enacted before Speaks spoke up in opposition to the vaccination requirement. Therefore, it is not reasonable to infer that there was a causal connection between her criticism of the policy and her termination."). Accordingly, the retaliation claim is dismissed.

15

## CONCLUSION

For the reasons set forth above, the defendant's motion to dismiss is granted.  The

plaintiff's motion to amend is denied as futile.

Although courts in this circuit are generally reluctant to dismiss a *pro se* plaintiff's action

without permitting leave to amend, it is appropriate to do so "[w]here it appears that granting

leave to amend is unlikely to be productive." *Ruffolo*, 987 F.2d at 131.  Because neither the

plaintiff's original complaint, nor her proposed amended complaint, contain allegations or

representations that suggest she could possibly state a cognizable claim for relief, granting leave

to amend would be unproductive.  Accordingly, the complaint is dismissed, and the Clerk of

Court is directed to close this case.


**SO ORDERED.**

s/Ann M. Donnelly

_____
ANN M. DONNELLY
United States District Judge


Dated: Brooklyn, New York
       February 22, 2023